The **NATIONAL TRUST FOR HISTORIC PRESERVATION IN the UNITED STATES, et al., Plaintiffs,**

v.

**U.S. ARMY CORPS OF ENGINEERS, et al., Defendants.**

No. C–1–82–624.

United States District Court, S.D. Ohio, W.D.

Dec. 10, 1982.

*Pipeline Service Co. v. The Vessel Bay Ridge,* 509 F.Supp. 1115, 1123 n. 44; *Grand Bahama,* 450 F.Supp. at 449–51.

Timothy M. Burke, Cincinnati, Ohio, for Riverside Civic and Welfare Club, Inc. and Prospect Point Homeowners Ass'n.

Gary W. Wilburn, Washington, D.C., for Nat. Trust for Historic Preservation in the U.S.

W. Joseph Dehner, Jr., Cincinnati, Ohio, for Miami Purchase Ass'n for Historic Preservation.

Ely M.T. Ryder, Asst. City Sol., Cincinnati, Ohio, amicus curiae for City of Cincinnati.

Elizabeth Gere Whitaker, Asst. U.S. Atty., Cincinnati, Ohio, Rebecca A. Donnellan, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for U.S. Army Corps of Engineers, John O. Marsh, Jr., Secretary of the Army, Joseph K. Bratton, Chief of Engineers, U.S. Army Corps of Engineers, C.E. Eastburn, Dist. Engineer, Louisville Dist., U.S. Army Corps of Engineers.

P. Michael McCaulay, Cincinnati, Ohio, for Raymond J. Wandstrat.

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge:

This matter came before the Court for a consolidated hearing on cross-motions for summary judgment filed by plaintiffs (doc. 3), federal defendants (docs. 21, 22) and private defendant Raymond J. Wandstrat (doc. 24) and supporting memoranda. Plaintiffs filed a memorandum opposing defendants' motions (doc. 24) and federal defendants' replied (doc. 33) as did defendant Wandstrat (doc. 34). The Court has considered the pleadings and papers filed by the parties as well as arguments of counsel. Finding that there is no genuine issue as to any material fact and that plaintiffs are entitled to judgment as a matter of law, we hereby deny defendants' motions and enter judgment for plaintiffs.

Plaintiffs brought this action alleging that the defendants U.S. Army Corps of Engineers and Corps officials violated federal historic preservation statutes and regulations when they issued a permit to defendant Raymond Wandstrat to construct and maintain a barge loading and unloading facility in navigable waters of the Ohio River at Anderson Ferry, Hamilton County, Ohio. The plaintiffs in this action are the National Trust for Historic Preservation in the United States, a charitable, educational, non-profit corporation chartered by Congress to foster the historic preservation policy of the United States; Miami Purchase Association for Historic Preservation, an Ohio non-profit corporation formed to foster the preservation of culturally and/or historically significant sites, buildings, and objects in Ohio; Riverside Civil and Welfare Club, Inc., an Ohio non-profit corporation engaging in a variety of civic activities and composed of residents of the Cincinnati community of Riverside which is served by the Anderson Ferry; and Prospect Point Homeowners Association, a Kentucky association of homeowners in the Prospect Point development of Villa Hills, Kentucky which overlooks the Ohio terminus of the Anderson Ferry and the site of the proposed barge facility.

Plaintiffs seek a declaration that the federal defendants failed to comply with Section 106 of the National Historic Preservation Act, 16 U.S.C. § 470f, and Advisory Counsel on Historic Preservation Regulations at 36 C.F.R. Part 800 in issuing a permit to defendant Wandstrat. They also seek an injunction prohibiting defendants from proceeding with work under the permit, and an injunction requiring the defendants to comply with applicable statutory and regulatory requirements in any future undertakings relating to activities that are the subject of this litigation.

Agency action is reviewable under the Administrative Procedure Act which provides that reviewing courts are to set aside agency actions that are "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2). It is well-settled that when reviewing agency action a court is to determine whether the agency's action followed the necessary procedural requirements. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 417, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Counsel for all parties agree that the only issue before the Court is whether defendants complied with the statutory and regulatory procedures which govern any undertaking involving property included in or eligible for inclusion in the National Register. We will begin, therefore, with a summary of these procedures.

The National Historic Preservation Act of 1966, 16 U.S.C. § 470 et seq., established the Advisory Council on Historic Preservation, an independent federal agency charged with advising the President and Congress on matters relating to historic preservation. Section 106 of the Act, 16 U.S.C. § 470f as amended (Supp.1981), provides:

> [T]he head of any Federal department or independent agency having authority to license any undertaking shall . . . prior to the issuance of any license, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register [of Historic Places]. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i to 470t of this title a reasonable opportunity to comment with regard to such undertaking.

Pursuant to its authority to promulgate regulations implementing Section 106, the Advisory Council has established procedures governing agency consultation with the Council and the manner in which the Council comments on federal undertakings under Section 106. 36 C.F.R. Part 800.

These Regulations require an agency as early as possible before making a final decision and in any event before taking any action that would foreclose the Council's ability to comment, to comply with the requirements in Section 106. 36 C.F.R. § 800.4. Having determined that a property included or eligible for inclusion in the National Register of Historic Places is within the area of the undertaking's potential impact, the agency must determine whether that property will be affected by the undertaking. 36 C.F.R. § 800.4(b). If so, the agency must determine whether that effect will be adverse. 36 C.F.R. § 800.4(c)(2).

If the agency, in consultation with the State Historic Preservation Officer (SHPO), determines that the undertaking will result in no adverse effect, the agency must forward adequate documentation of a No Adverse Effect Determination to the Council for review under 36 C.F.R. § 800.6. 36 C.F.R. § 800.4(c). The documentation must include a statement explaining why each of the criteria of adverse effect found in 36 C.F.R. § 800.3 is inapplicable. 36 C.F.R. § 800.13(a)(4).

If the agency finds that the effect is adverse or if the Council does not accept the agency's No Adverse Effect Determination, the agency must:

1. Prepare and submit a Preliminary Case Report requesting the comments of the Council . . ., and

3. Proceed with the consultation process set forth in § 800.6.

36 C.F.R. § 800.4(d). The Preliminary Case Report must include a statement explaining why any of the criteria of adverse effect apply and should be submitted with a request for comments. 36 C.F.R. § 800.13(b). The Regulations also provide that until the Council issues its comments,

> [g]ood faith consultation shall preclude a Federal agency from taking . . . any action or making any . . . commitment that could result in an adverse effect . . . or that would foreclose the consideration of modifications or alternatives to the proposed undertaking that could avoid, mitigate, or minimize such adverse effects.

36 C.F.R. § 800.4(e).

The procedures for the consultation process itself appear at 36 C.F.R. § 800.6. If a No Adverse Effect Determination has been

made, the Council will advise the agency within fifteen days if the documentation is inadequate. Unless the Council objects within thirty days of the receipt of an adequately documented determination, the agency will be considered as having met its obligations under Section 106. 36 C.F.R. § 800.6(a).

In the event the agency makes an Adverse Effect Determination, an agency official, the SHPO, and the Executive Director of the Council act as consulting parties to consider feasible alternatives that could avoid, mitigate or minimize adverse effects. The agency provides copies of a Preliminary Case Report to the consulting parties. At the request of any of the consulting parties, the agency conducts an on-site inspection and/or the Council conducts a public meeting at facilities provided near the site of the undertaking by the agency. If the consulting parties agree upon an alternative, they execute a Memorandum of Agreement. 36 C.F.R. § 800.6(b). Unless scheduled for consideration in a Council meeting, the Memorandum becomes final upon approval by the Chairman of the Council or within thirty days from the date the executed agreement is received by the Council. A final Memorandum constitutes the comments of Council required by Section 106. 36 C.F.R. § 800.6(c). If the parties cannot agree upon a Memorandum of Agreement, upon the recommendation of the Executive Director of the Council, the matter is considered by the Council. 36 C.F.R. §§ 800.-6(b)(7), (d).

This matter came before the Court on cross-motions for summary judgment. The narrow question which we must decide, therefore, is whether there is "no genuine issue as to any material fact and whether [either of] the moving part[ies] is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In Re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the

evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979) (emphasis original). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.,* quoting Rule 56(c), Fed.R.Civ.P. Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.*

After a review of the pleadings, affidavits, and exhibits, the Court concludes that the following facts are not in dispute. Defendant Wandstrat applied on August 29, 1980 to the Army Corps of Engineers for a permit to construct and maintain a barge loading and unloading facility near Anderson Ferry. On December 10, 1980 the Corps issued a public notice of the Wandstrat application (doc. 22, ex. 10). The Regional Preservation Officer notified the Corps by letter of December 11, 1980 that the Anderson Ferry was under review for inclusion in the National Register of Historic Places and that it had been preliminarily approved by the Ohio Historic Society Preservation Advisory Board and approved by the Kentucky Heritage Commission. The Officer requested that the Corps comply with Section 106 (doc. 23, ex. 11). In a December 19, 1980 letter to the Corps, the Ohio State Historic Preservation Officer (Ohio SHPO) corroborated the December 11 letter and urged that the Corps comply with the regulations issued by the Advisory Council (doc. 23, ex. 12).

On April 2, 1981 the Corps issued notice of a public hearing to be held May 26, 1981 (doc. 3, ex. C, app. A). In response to notice of that meeting, the Kentucky SHPO notified the Corps in a letter dated May 18, 1981 that a National Register nomination of the Kentucky portion of the Anderson Fer-

ry had been approved by the Kentucky Historic Preservation Review Board and would be forwarded to the Register (doc. 3, ex. B). The City of Cincinnati advised the Corps on May 4, 1981 that the Wandstrat proposal violated city zoning laws (doc. 22, ex. 13), and on May 20, 1981 Cincinnati City Council adopted a resolution urging the Corps to reject Wandstrat's application for a permit (doc. 22, ex. 14).

At the May 26, 1981 public hearing, defendant Wandstrat verbally modified his proposal (doc. 22, ex. 18, 2 of Preliminary Case Report); the modified proposal was subsequently presented to the Corps (doc. 22, ex. 16). On July 15, 1981 the Corps issued public notice of the revised permit application, and extended the comment period to August 3, 1981 (doc. 22, ex. 17). During the comment period the Corps received comments from federal, state and local government agencies as well as letters from individuals and petitions opposing the Wandstrat proposal (doc. 22, ex. 18, 2 of Preliminary Case Report).

The Corps provided the Advisory Council with a Preliminary Case Report September 10, 1981. The cover letter states that the Report is submitted "[i]n accordance with the Regulations of the Advisory Council on Historic Preservation 36 C.F.R. Part 800 . . . with a request for the comments of the Council" (doc. 22, ex. 18). The Report states:

> The Advisory Council's Criteria of Adverse Effect Section 800.3(b)(1) are applicable because the proposed barge facility could diminish the historical integrity of the Anderson Ferry through visual impact. In addition, the proposal threatens the continuing operation of the ferry, as well as presenting a hazard to safe navigation in the area. However, it is the decision of the Corps of Engineers that the proposal, as revised, would minimize these impacts (doc. 22, ex. 18, 2 of Report).

Shortly after receiving the Preliminary Case Report, the Council requested an on-site inspection of Anderson Ferry and the proposed barge facility; the inspection was eventually scheduled for January 11, 1982 (doc. 29, ex. Q, app. A). At that inspection the Corps' draft Findings of Fact were given to Council staff member Charlene Dwin. These Findings of Fact include the statement that the Preliminary Case Report depicted a "no adverse effect determination" and asserts that the Advisory Council's failure to object to the determination or to request further documentation permitted the Corps to proceed with the undertaking" (doc. 22, ex. 21, 7–8).

The "memo to the file" prepared by the Corps representative at the on-site inspection and dated January 15, 1982 indicates that the participants agreed that a Memorandum of Agreement could be drawn up, a process Dwin indicated would take two weeks. The memo also states that the Corps explained to Dwin the importance of completing this action quickly (doc. 22, ex. 20).

Prior to the on-site inspection, the Corps prepared an Environmental Assessment pursuant to the National Environmental Policy Act, 42 U.S.C. § 4332, and dated December 9, 1981 which includes the statement that under the revised proposal, "there should not be a significant adverse visual impact" and that the matter had been submitted to the Advisory Council for a 'no effect' determination" (apparently a reference to the Preliminary Case Report). The Assessment also states that because the Council had not responded "within the prescribed time period" the Corps concluded that would be no adverse effect (doc. 22, ex. 19).

On January 15, 1982 the Corps provided the Advisory Council with documents which Dwin had requested at the on-site inspection, including photographs of the site and the Environmental Assessment. The cover letter to the Council includes the statement that "I would like to emphasize the importance of a timely completion of your review on this matter and urge *that your comments be prepared* as expeditiously as possible" (doc. 22, ex. 22) (emphasis added).

The Corps subsequently prepared final Findings of Fact which include the same

statements as the draft Findings with respect to the project's effect on the Anderson Ferry (compare doc. 22, ex. 21, 7–8 with doc. 22, ex. 25, 7–8). Defendants assert without objection that this document was also submitted to the Advisory Council.

On March 15, 1982 Advisory Council staff called to notify the Corps that the Memorandum of Agreement was being mailed. At that time the Council was informed that the permit had been issued to defendant Wandstrat March 2, 1981, but without notice to the Council or either the Ohio or Kentucky SHPOs (doc. 29, ex. Q, 7). The following day the Council sent a mailgram to the Corps stating that the consultation process begun September 14, 1981 was still ongoing and that the Corps' failure to obtain the Council's comments prior to issuing the permit appeared to be a violation of Section 106 and the Council's Regulations (doc. 3, ex. J). Despite the Council's urging that the permit be suspended so that the consultation process could be completed (doc. 3, ex. L), the Corps refused, stating on May 19, 1982 that the Corps intended to take no further action with respect to the permit (doc. 3, ex. M).

This action was filed June 22, 1982. In August the Council and the Corps agreed to reopen the consultation process, but when the consulting parties were unable to agree to the terms of a Memorandum of Agreement, the Corps by letter dated September 10, 1982 requested the Council to consider the matter at its next meeting and "to proceed with its comments as provided for under your Regulations" (doc. 22, ex. 23). On October 19, 1982 the full Council reviewed the issuance of the Wandstrat permit. After hearing testimony, the Council concluded "that by issuing the permit before completing the process required by our Regulations and then seeking our comments with the permit still in force, the Corps had foreclosed the Council's opportunity to comment," thereby preventing the Corps from giving serious consideration to Council's comments as required by Section 106. Accordingly, the Council adopted a resolution stating that because the Corps refused to give the Council a "reasonable opportunity to comment as required by Section 106, the Council declines to comment until the Corps remedies its action by withdrawing the permit" (doc. 22, ex. 24).

Defendants contend that the Corps determined that the proposed barge facility would not adversely affect Anderson Ferry, arguing that the Preliminary Case Report submitted September 10, 1981 to the Council represents a No Adverse Effect Determination pursuant to 36 C.F.R. §§ 800.4(a) and 800.6. Defendants rely upon language in that Report to the effect that "the proposed barge facility could diminish the historical integrity of the Anderson Ferry" but that "the proposal, as revised would minimize those impacts" (doc. 22, ex. 5). They argue further that even if it were determined that the Preliminary Case Report is in effect an Adverse Effect Determination triggering the consultation process, later documents submitted by the Corps, in particular the Environmental Assessment and the draft and final Findings of Fact, made it clear that the Corps had subsequently made a No Adverse Effect Determination. Consequently, defendants conclude, the Council's failure to request further documentation and/or to object pursuant to 36 C.F.R. § 800.6(a) compels a finding that the Corps satisfied its Section 106 obligation to allow the Council a reasonable opportunity to comment.

■ We are unpersuaded. The argument that the Preliminary Case Report constitutes a No Adverse Effect Determination strains credibility. First the Corps gave that document the specific title provided by 36 C.F.R. 800.4(d) for an Adverse Effect Determination. Second, the plain meaning of "the proposal, as revised would minimize these [adverse] impacts" is not that the revision eliminated the impact. The bright line drawn by the Regulations is between effect and no effect, not between effect and minimal effect. Finally, in the letter accompanying the Preliminary Case Report, the Corps stated that it was submitting the Report "with the request for the comments of the Council" (doc. 22, ex. 18). Taking

these facts together, we conclude that the Corps' September, 1981 submission to the Council amounted to an Adverse Effect Determination triggering the consultation process.

The conclusion that the report represented an Adverse Effect Determination is further supported by the contents of that Report and the statement therein that "[t]he Advisory Council's Criteria of Adverse Effect Section 800.3(b)(1) are applicable" (doc. 22, ex. 18, 2). The Regulations specifically provide that the documentation for a No Adverse Effect Determination describe why each of the criteria of adverse effect are inapplicable, 36 C.F.R. § 800.13(a)(4), but that the Preliminary Case Report submitted in the event of an Adverse Effect Determination explain why any of the criteria are applicable, 36 C.F.R. § 800.13(b)(6).

Defendants maintain, however, that even if the Preliminary Case Report did constitute an Adverse Effect Determination, the Corps properly notified the Council that it had reversed its position and made a No Adverse Effect Determination. Defendants insist that their statement in the Environmental Assessment that the matter had been sent to Council for a "No Adverse Effect Determination" (doc. 22, ex. 19) and assertions in the draft and final Findings of Fact that the Preliminary Case Report depicted a No Adverse Effect Determination (doc. 22, ex. 21, 25) were sufficient to notify Council of the change in their position.

These statements are, however, ambiguous. Furthermore, buried as they are in reports, the statements are not adequate notice of a reversal in position when weighed against the Corps' own behavior. Given that the Council had requested an on-site inspection shortly after the submission of the Preliminary Case Report, the Corps can hardly argue that it was unaware that the Council believed the consultation process to have been triggered. Moreover, the communications between the Corps and Council continued to refer to the consultation process. To take only one example, in its January 15, 1982 letter to the Council, the Corps urged that "*your comments* be prepared as expeditiously as possible" (doc. 22, ex. 22) (emphasis added). Finally, the Corps' own memo to the file describing the on-site inspection, states that a Memorandum of Agreement would be developed (doc. 22, ex. 20). A Memorandum of Agreement is developed only when there has been an Adverse Effect Determination or the Council has objected to a No Adverse Effect Determination. In other words, a Memorandum of Agreement is prepared only if the consultation process has been triggered.

In light of the defendants' conduct and the language employed in its own letters and documents, the Court concludes that the Preliminary Case Report constituted an Adverse Effect Determination triggering the consultation process. Furthermore, if indeed the Corps did subsequently reverse that determination, it did not properly notify Council of the change. Thus the consultation process was never terminated. Once it had initiated the consultation process, the Corps was required under 36 C.F.R. § 800.-4(e) not to take any action until the Advisory Council issued its comments. The Court finds, accordingly, that in issuing the permit to defendant Wandstrat, the Corps violated its statutory duty under Section 106 to await Council's comments.

Defendants argue, however, that they in fact did give the Council a "reasonable opportunity to comment" as required by Section 106 in that they waited five months after submitting the Preliminary Case Report before issuing the permit. The argument rings hollow. The Corps was required by 36 C.F.R. § 800.4 to comply "as early as possible" with the Regulations enacted by Council pursuant to Section 106. Despite the clear command of the Regulations, the Corps did not notify the Council until September, 1981, over a year after the permit application was filed and nine months after learning that the Anderson Ferry was being considered for inclusion in the National Register (see doc. 23, ex. 11). Further, Congress authorized the Advisory Council to promulgate regulations as necessary to govern the implementation of Section 106. 16

U.S.C. § 470s (1981 Supp.); *National Center for Preservation Law v. Landrieu,* 496 F.Supp. 716, 742 (D.S.C.), *affirmed* 635 F.2d 324 (4th Cir.1980). These Regulations, codified at 36 C.F.R. Part 800, establish what is a "reasonable opportunity to comment." The Corps may not violate these Regulations and at the same time insist that it has complied with Section 106. As the United States Court of Appeals for the Fifth Circuit has stated, "the language [of Section 106] is mandatory and the scope broad." *United States v. 162.20 Acres of Land,* 639 F.2d 299, 302 (5th Cir.1981), *cert. denied* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1980). *See also WATCH v. Harris,* 603 F.2d 310, 326 (2d Cir.), *cert. denied,* 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979).

The Court's conclusion that the permit was issued unlawfully is consistent with the Advisory Council's determination both initially by the Executive Director and more recently by the full Council after consideration that the permit was issued in violation of Section 106 (doc. 3, ex. J; doc. 22, ex. 24). As the agency created to administer Section 106, the Council and its determinations are owed great deference unless those determinations are clearly in error. *Red Lion Broadcasting Co. v. F.C.C.,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *Jones v. Board of Education,* 474 F.2d 1232, 1233 (6th Cir.1973). In the instant case, the Court finds itself in complete agreement with the Council.

The Court finds that there are no genuine disputes as to any material fact, and that plaintiffs are entitled to judgment as a matter of law. Accordingly, all defendants are hereby enjoined from proceeding with the barge facility project described in the permit issued March 2, 1982 by the Army Corps of Engineers to defendant Wandstrat. Further, defendants are enjoined from proceeding with any similar project in the future without full compliance with Section 106 and the Regulations promulgated pursuant to that section by the Advisory Council.

SO ORDERED.