**VIEUX CARRE PROPERTY OWNERS, RESIDENTS AND ASSOCIATES, INC., Plaintiff–Appellant,**

v.

**Colonel Lloyd Kent BROWN, et al., Defendants–Appellees.**

No. 90–3740.

United States Court of Appeals, Fifth Circuit.

Dec. 26, 1991.

James G. Derbes, James R. Logan, IV, New Orleans, La., for plaintiff-appellant.

Andrea Ferster, Chris Gobert, New Orleans, La., Elizabeth S. Merritt, David A. Doheny, Washington, D.C., for amicus curiae, Nat. Trust.

Charles M. Lanier, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Bd. of Com'rs, Port of N.O.

Henry W. Kinney, Kinney & Marshall, New Orleans, La., for Audubon Park Com'n.

Okla Jones, II, City Atty., Bruce E. Naccari, Dept. of Law, City of New Orleans, City Atty's Office, William D. Aaron, New Orleans, La., for City of New Orleans.

Harry Rosenber, U.S. Atty., S. Mark Gallinghouse, Asst. U.S. Atty., New Orleans, La., Elizabeth A. Peterson, Atty., Dept. of Justice, Appellant Section, Martin W. Matzen, Washington, D.C., for Brown—U.S.

Before REYNALDO G. GARZA, WIENER, and BARKSDALE, Circuit Judges.

WIENER, Circuit Judge:

For the second time, this court is asked to resolve the continuing dispute between Vieux Carre Property Owners, Residents and Associates, Inc. (Vieux Carre), an historic building preservation group, and the United States Army Corps of Engineers (the Corps) over the construction of a riverside park in New Orleans. In this appeal, Vieux Carre urges us to overrule the district court's decision on remand dismissing Vieux Carre's suit on various grounds of mootness. We agree with Vieux Carre that in finding the case moot the district court violated the "law of the case" doctrine and determined incorrectly that the historic preservation review required under the National Historic Protection Act was not necessary once a federally-licensed project was completed or substantially completed. Therefore, we reverse the district court's dismissal of Vieux Carre's suit, and remand for disposition consistent with this opinion and our first opinion.[1] At this time, however, we cannot and do not decide whether the case fits the "capable of repetition, yet evading review" exception to the mootness doctrine. On second remand, therefore, if the district court again finds the case moot, we instruct it to consider whether this exception applies given that Vieux Carre is unable to maintain the status quo by enjoining the park project's non-federal developers. Lastly, finding that no reasonable person knowing all the circumstances would harbor doubts about the dis-

1. *Vieux Carre Property Owners, Residents & Associates, Inc. v. Brown,* 875 F.2d 453 (5th Cir. 1989), cert. denied, 493 U.S. 1020, 110 S.Ct. 720, 107 L.Ed.2d 739 (1990) (*Vieux Carre I*).

trict judge's impartiality, we agree with the Corps that the district judge was not required under 28 U.S.C. § 455 to recuse himself from the case.

## I. FACTS AND PROCEDURAL HISTORY

### A. THE DISTRICT COURT'S FIRST DECISION

Because the facts and procedural history of this case are discussed fully in *Vieux Carre I*, we do no more here than summarize those matters. The case originated from the decision of the Audubon Park Commission, a local government entity in the City of New Orleans, to build an aquarium and park on the Mississippi riverfront in New Orleans. Because some structures were to be built on the Bienville Street Wharf (the Wharf), the Audubon Park Commission submitted its plans to the Corps, which has jurisdiction over the Wharf under Section 10 of the Rivers and Harbors Act (RHA).[2] The Wharf is located entirely within the Vieux Carre National Historic Landmark District, which is popularly known as New Orleans's French Quarter and is listed in the National Register of Historic Places.

After consideration of the proposed riverfront project, the Corps concluded that the *aquarium* would not require a permit because it was to be built entirely landward of the Mississippi's Ordinary High Water Line (OHWL), but that the *park* would require a permit because it was to be built on the Wharf completely within the OHWL. The Corps determined, however, that because construction of the park would not require changing the Wharf's dimensions or maritime uses and would have no effect on navigation, the project did not require an "individual permit,"[3] but could go forward under a regulation, somewhat misleadingly called a "nationwide permit,"[4] promulgated by the Corps under RHA § 10. The Corps's belief, later proven to be incorrect, was that the Wharf itself was within the § 330.3(b) nationwide permit, which authorizes, under certain circumstances, structures or work completed before December 18, 1968.[5] The Corps decided that it was not required to undertake the historic review consultation procedures mandated by Congress in Section 106 of the National Historic Preservation Act (NHPA),[6] and the implementing regulations

**2.** 33 U.S.C. § 403 et seq. The RHA prohibits activities affecting the course, condition, location, or capacity of any navigable water unless authorized by a permit issued by the Corps. See, e.g., *Bayou Des Familles Dev. Corp. v. United States Corps of Engineers,* 541 F.Supp. 1025, 1032 (E.D.La.1982).

**3.** The Corps issues two types of permits, individual and general. 33 CFR § 325.5(a).

**4.** A nationwide permit is a form of general permit that authorizes specific types of activities throughout the nation. See 33 CFR Part 330. There are various types of nationwide permits. See 33 CFR §§ 330.3 and 330.5. In this case, the Corps contends that the park project falls within the 33 CFR § 330.5(a)(3) nationwide permit, which provides:

> The repair, rehabilitation, or replacement of any previously authorized, currently serviceable, structure or fill, or of any currently serviceable structure or fill constructed prior to the requirement for authorization, provided such repair, rehabilitation, or replacement does not result in a deviation from the plans of the original structure or fill, and further provided that the structure or fill has not been put to uses differing from uses specified for it in any permit authorizing its original con-

struction. Minor deviations due to changes in materials or construction techniques and which are necessary to make repair, rehabilitation, or replacement are permitted. Maintenance dredging and beach restoration are not authorized by this nationwide permit.

**5.** 33 CFR § 330.3(b) permits "[s]tructures or work completed before December 18, 1968, or in waterbodies over which the district engineer had not asserted jurisdiction at the time the activity occurred provided, in both instances, there is no interference with navigation." In *Vieux Carre I,* we determined that the Wharf did not come within this nationwide permit because the Corps stipulated that reconstruction of the Wharf under the 1930 permit affected navigation. 875 F.2d at 464.

**6.** 16 U.S.C. § 470 et seq. 16 U.S.C. § 470f provides as follows:

> The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the is-

promulgated by the Advisory Council on Historic Preservation (Advisory Council),[7] because activities under a nationwide permit are not "licensed."

Originally, Vieux Carre brought a declaratory judgement suit against the Corps on grounds that the RHA and the Corps's own regulations required the Corps to issue an individual permit for the aquarium, and that individual permitting, in turn, required that the aquarium project be subjected to the NHPA review process. Vieux Carre also claimed that the park project required an individual permit. Vieux Carre argued alternatively that even if the park project came under a nationwide permit, thus avoiding the need for an individual permit, the nationwide permit is still a license within the meaning of NHPA and therefore triggers NHPA review. Vieux Carre sought a judgment declaring that the Corps must comply with the historic review process, and also sought an injunction to keep the non-federal parties from proceeding with the riverfront project. After an evidentiary hearing on this matter, the district court dismissed Vieux Carre's suit on jurisdictional grounds, finding that Vieux Carre had no private right of action under RHA §§ 10 and 14 to compel the Corps to undertake the permitting process, and concluding that the Corps's decisions made pursuant to those statutes are unreviewable under § 701(a)(2) of the Administrative Procedures Act (APA). Vieux Carre appealed to this court.

## B. THIS COURT'S FIRST DECISION

In *Vieux Carre I*, we reversed the district court's determination that the Corps's decisions under the RHA were non-reviewable, explaining that APA § 701(a)(2) is applied "primarily to situations in which agencies have chosen not to enforce or prosecute violations of their regulations, rather than to agency decisions on whether or not to approve activities governed by a statute that sets guidelines for determining when such approval should and should not be given."[8] We did, however, affirm the district court's dismissal of Vieux Carre's suit for an injunction against non-federal parties, reasoning that "neither the APA nor the NHPA give a private plaintiff a right of action against any of the defendants other than the Corps."[9] We also affirmed the dismissal of Vieux Carre's complaints concerning the aquarium phase of the project, albeit for reasons different from those given by the district court.[10] But we reversed the dismissal of Vieux Carre's claims concerning the park project, and remanded the case to the district court with instructions to make specific legal and factual findings, including (1) whether the park project required an individual permit or was within the § 330.5(a)(3) nationwide permit, and, (2) assuming the nationwide permit was found by the district court to be appropriate, whether the permit was valid and the park project triggered NHPA.

As to the second question, whether activities pursuant to the § 330.5(a)(3) nationwide permit can trigger NHPA review, this court concluded that the § 330.5(a)(3) nationwide permit, which the Corps claims is applicable to the park project, is a "license"

suance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i to 470v of this title a reasonable opportunity to comment with regard to such undertaking.

7. 36 CFR § 800 et seq. The Advisory Council, which is responsible for the implementation of NHPA § 106, consists of officials from federal and state government, historic preservation experts, and members of the general public.

8. 875 F.2d at 456 n. 1, citing *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), and distinguishing *Harmon Cove Condominium Asso. v. Marsh*, 815 F.2d 949 (3rd Cir. 1987).

9. Id. at 456. Accordingly, on remand to the district court, all non-federal parties were dismissed.

10. Id. at 456, 459–62. Specifically, we concluded that the Corps's determination that it had no permit authority over the aquarium was not arbitrary and capricious in light of RHA § 10 and the cases and regulations that define the scope of the Corps's RHA § 10 jurisdiction.

and therefore subject to the § 330.5(b)(9) requirement that the Corps give the Advisory Council an opportunity to comment if it determines that historic properties may be adversely affected by the permitted activities. We decided, however, to take a middle path between the Corps's position on the one hand, that NHPA's § 106 "undertaking" requirement is coterminous with the "major federal undertaking" requirement in the National Environmental Policy Act (NEPA),[11] and Vieux Carre's argument on the other hand, that *all* activities covered by a § 330.5(a)(3) nationwide permit trigger the NHPA review process. We held that "nationwide permits authorizing truly inconsequential activities are not triggering 'licenses' under § 470f." [12] Therefore, we remanded the case and instructed the district court to make the following findings of fact and law:

> The Corps apparently determined that the park constitutes a "rehabilitation" or "replacement" of the wharf, that the park plans do not deviate from the 1930 plans of the wharf except for minor deviations due to changes in materials or construction techniques that are necessary for the rehabilitation or replacement, and that the park is not a use differing from uses specified in the 1930 wharf permit. The reviewing court must determine whether the Corps' interpretation of its own regulation is reasonable and consistent with the regulations themselves. Because the district court did not address this issue, we remand for an interpretation of the scope of section 330.5(a)(3); a determination of whether the Corps' finding that the riverfront park is covered by this nationwide permit (as the district court defines it) was arbitrary or capricious; and if the park is

covered by section 330.5(a)(3), a ruling on whether the project is so inconsequential that it escapes section 470f's historic impact review requirements.

Finally, if the district court finds that the riverfront park does fall under section 330.5(a)(3) and is inconsequential, it must also address the Vieux Carre's argument that this nationwide permit is invalid because the Corps did not evaluate the park's impact on historic properties as is required by the Corps' own regulation—section 330.5(b)(9). The Audubon Park Commission notified the Corps (so as to apparently trigger that regulation) when it submitted plans for the project and asked whether permits would be necessary.[13]

## C. THE DISTRICT COURT'S DECISION ON REMAND

On August 15, 1990—months after our decision remanding this case—the district court again dismissed Vieux Carre's suit, this time on grounds of mootness. The district court on remand found that "[b]ecause construction of the park was virtually complete" when the Corps's motion dismissing the suit for mootness "was submitted for decision (indeed, the park has been in actual use by the general public for a number of months), there is no relief sought by the plaintiff which can be granted." The district court gave four reasons for this conclusion. First, it asserted that although the Corps has authority to revoke, suspend, or modify nationwide permits under 33 CFR § 325.7, it has no authority to do so when the project is "substantially completed" because once "[t]he developers have completed virtually all of the work authorized by the nationwide permit," the permit in effect "expired." [14]

11. 42 U.S.C. § 4321 et seq. In doing so, we rejected the position taken by the Eighth Circuit in *Ringsred v. Duluth*, 828 F.2d 1305, 1309 (8th Cir.1987), which equated NHPA's § 106 "undertaking" with the "major federal undertaking" requirement in NEPA.

12. We pointed out that some nationwide permits, but not others, require application to or notification of the Corps. In the specific context of the § 330.5(a)(3) nationwide permit, however, we concluded that the fact that it does

not require notification of the Corps is not dispositive of whether it is a NHPA-triggering license. 875 F.2d at 465.

13. Id. at 465–66 (citations omitted).

14. The district court found the instant case analogous to *Potomac River Asso. Inc. v. Lundeberg Maryland Seamanship School, Inc.*, 402 F.Supp. 344 (D.Md.1975), in which the district court found that expiration of individual dredge

Second, the district court concluded that, because "the park project, as completed, does not deviate from the proposed project[,] which was reviewed by the Corps of Engineers and found to be permissible under the nationwide permit," the Corps could not require changes to the park project under its enforcement provisions in 33 CFR § 326.3.

Third, the court found the suit moot because "there is no statutory or jurisprudential authority mandating historic review for a completed project." The district court distinguished cases requiring NHPA review of on-going, federally-funded projects as long as the federal agency had some opportunity to exercise discretion over the project, and concluded that "[r]equiring historic review of a [privately-funded] project, now virtually complete, would unduly penalize developers who acted in good faith reliance upon the representation by the Corps of Engineers that the project could proceed as proposed." The district court explained that "[t]he practical effect of requiring historic review at this point is to permit plaintiff to do indirectly that which it cannot do directly, i.e., make a claim against the now dismissed non-federal defendants for an alleged violation of the NHPA."

Fourth and finally, the district court concluded that the case does not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine, because, although the wrongs are clearly capable of repetition, there was no reason to believe Vieux Carre could not sue to require the Corps to follow its own regulations and the NHPA review process before the Corps allows a project to go forward under "a nationwide permit letter."

After the Corps filed its motion to dismiss for mootness, and before the scheduled hearing on the matter, Vieux Carre asked the district judge to recuse himself from the case because his "close personal and political friendship" with the Mayor of New Orleans created an "appearance of impropriety." Apparently, the incumbent Mayor of New Orleans touted the riverfront project as one of his administration's more significant accomplishments, and Vieux Carre believed that a decision in its favor could pose substantial problems for the mayor's reelection campaign.[15] Instead of recusing himself, the district judge rescheduled the hearing on mootness for after the mayoral election. Then, reasoning that because the sole basis for Vieux Carre's motion was the mootness hearing's close temporal proximity to the election, the district judge denied Vieux Carre's disqualification motion.

## II. ANALYSIS

### A. LAW OF THE CASE

 Vieux Carre claims that the district court violated the law of the case doctrine when it based its mootness determination on its own assumptions about the very questions of law it was supposed to decide on remand. We agree. The law of the case doctrine essentially means that the district court's task on remand (and for that matter, our task on subsequent review) is to follow the findings, holdings, and instructions contained in the appellate court's initial mandate, absent an extremely good reason to do otherwise.[16] In this case, of course, the law of the case doctrine does not bar the district court from considering the question of mootness; *Vieux Carre I* did not rule on that issue, which

and fill permits, each with a specific expiration date, rendered moot the suit against the Corps challenging those permits. We need not address the correctness of either the district court's analogy in this case or the decision reached in *Lundeberg*.

15. The Corps's motion to dismiss for mootness was to be considered on January 10, 1990; the mayoral election was scheduled for February 5, 1990.

16. *Illinois C.G.R. Co. v. International Paper Co.,* 889 F.2d 536, 539 (5th Cir.1989) (noting that the "law of case doctrine, although well established, is not inviolable"), citing *Falcon v. General Telephone Co.,* 815 F.2d 317, 320 (5th Cir.1987). For an exhaustive discussion of the law of the case doctrine, see *Litman v. Massachusetts Mutual Life Ins. Co.,* 825 F.2d 1506 (11th Cir.1987) (en banc).

was raised for the first time on remand.[17] The district court therefore had a right—indeed, a constitutional duty [18]—to consider on remand whether mootness deprived it of jurisdiction to consider the suit. Nevertheless, none of the circumstances this court has recognized as permitting departure from the law of the case applies here.[19] Therefore, it was error for the district court to base its determination that the suit was moot on its unexplored assumptions about the very questions of law and fact we had instructed it to decide on remand.

Specifically, two of the district court's reasons for finding the suit moot assume answers to the questions we required it to determine on remand. First, the district court assumed without determining that the Corps has no continuing authority over the park project under its modification authority in 33 CFR § 325.7 because the nationwide permit "expired" when the project was completed.[20] In *Vieux Carre I*, however, we specifically instructed the district court to determine whether (1) the park project does come within the nationwide permit, or (2) the Corps's decision that it did was arbitrary and capricious. Second, we instructed the district court that, if the project was found to be under a nationwide permit, the court should determine whether the nationwide permit would be *invalid* because the Corps did not evaluate the park project's impact on historic properties as required by the Corps's own regulations, § 330.5(b)(9).[21] Therefore, the district court was premature in deciding that the permit "expired" with the park project's completion or substantial completion because that court has never determined whether a valid permit ever existed.[22] Similarly, it was error for the district court to assume that the Corps has no continuing jurisdiction over the park project pursuant to its § 326.3 enforcement authority simply because the completed project "did not deviate" from the proposed project, which the court found to be "permissible under the nationwide permit." As noted, the very issue that we instructed the district court to determine on remand was whether a nationwide permit was indeed appropriate and valid.

17. See *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 n. 10 (5th Cir.1985), citing, among other things, *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962).

18. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). Because mootness goes to the constitutional requirement in Article III that a court may only decide actual cases and controversies, questions of mootness must be resolved before a court may assume jurisdiction over a case.

19. *Daly v. Sprague*, 742 F.2d 896, 900 (5th Cir. 1984) (finding three reasons for abandoning law of the case: "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice").

20. We also believe that the permit expiration argument was totally inapplicable because the record shows, and the district court found, that the project was not completed but only substantially completed. For example, affidavits submitted by the Corps showed that 85% of the construction cost of the park project had been paid out to contractors and that a document of substantial completion had been issued by the Corps. Even assuming that monies paid to contractors is an adequate measure of the park project's status, the Corps clearly retains control over the remaining 15% of the project.

21. 33 CFR § 330.5(b) provides conditions that *must* be followed in order for activities undertaken pursuant to the nationwide permits in 33 CFR § 330.5(a) to be *valid.* Condition § 330.-5(b)(9) provides in relevant part:

 That, if the activity may adversely affect historic properties which the National Park Service has listed on, or determined eligible for listing on, the National Register of Historic Places, the permittee will notify the district engineer. If the district engineer determines that such historic properties may be adversely affected, he will provide the Advisory Council on Historic Preservation an opportunity to comment on the effects on such historic properties or he will consider modification, suspension, or revocation in accordance with 33 CFR 325.7.

 33 CFR § 330.1 states that "[f]ailure to comply with a condition does not necessarily mean the activity cannot be authorized but rather that the activity can only be authorized by an individual or regional permit."

22. Without a valid and appropriate permit, the park project is unlawful under RHA § 10. See *Bayou Des Familles Dev. v. Corps*, 541 F.Supp. at 1032.

Because the district court made no legal or factual findings on whether the park project properly came within the § 330.-5(a)(3) nationwide permit, or, if it did, whether that permit was valid, we do not address the subsidiary question of when a permit expires under the Corps's duration regulations.[23] Neither do we decide, as the Corps urges us to, whether the park project concerns activities rather than structures; this is much the same factual and legal inquiry required in order to decide what permit is appropriate.[24] Nor do we consider whether the Corps has continuing jurisdiction under its modification or enforcement regulations.[25] We note, though, that if the district court determines on second remand that the Corps has no continuing jurisdiction over a completed project undertaken pursuant to a nationwide permit, it must then consider whether in this case the Corps is able nevertheless to order changes to the park project pursuant to its jurisdiction over the Wharf itself. In other words, because the park project is situated entirely on the Wharf, the Corps's jurisdiction over that permanent structure may be sufficient to give it jurisdiction over the riverfront park, even if the Corps would not otherwise have jurisdiction over completed activities lawfully undertaken pursuant to a § 330.5(a)(3) nationwide permit. In *Vieux Carre I*, as noted earlier, we rejected the Corps's argument that the Wharf itself was covered by a nationwide permit, explaining that the Wharf could conceivably come within only one nationwide permit, 33 CFR § 330.3(b), but that it did not because the Wharf's reconstruction under the 1930 permit affected navigability of the Mississippi River.[26]

## B. NHPA REVIEW OF A COMPLETED FEDERALLY–LICENSED PROJECT

On remand, the district court also concluded that, although NHPA review may be initiated after the start of a project, NHPA review is not required for a "completed" construction project. In a number of closely-reasoned cases, courts have interpreted NHPA, and the Advisory Council's regulations promulgated thereunder, to "require that NHPA be applied to ongo-

---

**23.** 33 CFR § 325.6. The Corps's duration regulations provide in part that "[p]ermits continue in effect until they automatically expire or are modified, suspended, or revoked." 33 CFR § 325.6(a). "Permits for the existence of a structure or other activity of a permanent nature are usually for an indefinite duration with no expiration date cited." 33 CFR § 325.6(b). "Permits for construction work, discharge of dredged or fill material, or other activity and any construction period for a structure with a permit of indefinite duration under paragraph (b) of this section will specify time limits for completing the work or activity." 33 CFR § 325.6(c).

**24.** The park project certainly involved structures in the colloquial sense of the word. The record shows that the parties stipulated that the park project includes such things as resurfacing, construction of walkways, a bandstand, and placement of potted plants and benches. The Corps may be able to demonstrate on remand, however, that these types of structures are consistent with the § 330.5(a)(3) nationwide permit.

**25.** The following introductory language of the Corps's modification, revocation, and suspension regulation indicates that the Corps is able to exercise its authority over at least some types of on-going and completed projects:

> The district engineer may reevaluate the circumstances and conditions of any permit, including regional permits, ... and initiate action to modify, suspend, or revoke a permit as may be made necessary by considerations of the public interest.... Among the factors to be considered are the extent of the permittee's compliance with the terms and conditions of the permit; whether or not circumstances relating to the authorized activity have changed since the permit was issued or extended, and the continuing adequacy of or need for the permit conditions; any significant objections to the authorized activity which were not earlier considered; ... and the extent to which modification, suspension, or other action would adversely affect plans, investments and actions the permittee has reasonably made or taken in reliance on the permit.

33 CFR § 325.7. There appears to be very limited judicial authority for the application of the Corps's modification authority to on-going and completed projects. See *Sierra Club v. Andrus*, 610 F.2d 581, 605–606 n. 37 (9th Cir.1979) (mentioning § 325.7(a) as one means by which permits for a completed and operating pumping station could be reevaluated), reversed on other grounds *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981).

**26.** 875 F.2d at 464.

ing Federal actions as long as a Federal agency has opportunity to exercise authority at any stage of an undertaking where alterations might be made to modify its impact on historic preservation goals." [27] The district court concluded, however, that this rule does not apply in this case because those cases involved on-going, *federally-funded* projects, and that the activities in question involved "destruction, not construction." The district court also found that to require historic review of the park project after its "virtual completion" would unduly penalize private developers who acted in good faith reliance on the Corps's representations that the project could proceed as proposed.

■ We are not at all certain just what the district court intended by this holding and reasoning. If the court means that NHPA itself draws a distinction between federally-funded and federally-licensed projects, we reject this conclusion as unsupported by NHPA's statutory language or legislative history.

■ Neither do we agree that distinctions between federally-funded and federally-licensed projects cited by the district court require that we articulate, as a matter of policy, a new and different rule for the point at which NHPA review of federally-licensed projects is no longer required, if that is what the district court intends. Specifically, we see no justification for allowing the interests of the non-party, non-federal developers to supplant the legitimate interests of Vieux Carre and the public at large in having the Corps comply with the historic review process. In *Vieux Carre I*, we found that, even though the

activities of the non-federal developers of the riverfront project allegedly had a negative effect on historic properties, the non-federal developers could not be enjoined because they were not parties to the dispute between Vieux Carre and the Corps. But our ruling cuts both ways: it also means that the interests of the non-federal developers are not an appropriate basis for concluding that Vieux Carre's suit is moot. Moreover, if the park project was not undertaken pursuant to a valid permit, and the Corps has to issue an after-the-fact permit, the express language of NHPA § 106 requires the Corps to afford the Advisory Council an opportunity to comment *prior to* its issuance of any license for an undertaking that may affect historic properties.[28]

■Furthermore, the district court's concern that the non-federal developers might be adversely affected by the result of NHPA review does not take into consideration the fact that the NHPA's § 106 review process contains specific procedures for consulting with interested parties, including the non-federal developers, and for taking their legitimate concerns into account when considering mitigation measures.[29] The interests of *all* parties can be considered within the context of the NHPA § 106 process.[30] Therefore, as long as the park project is under federal license and the Corps has the ability to require changes that could conceivably mitigate any adverse impact the project might have on historic preservation goals, the park project remains a federal undertaking and NHPA review is required.

**27.** *Morris County Trust for Historic Preservation v. Pierce*, 714 F.2d 271, 280 (3rd Cir.1983). See also *Waterbury Action to Conserve Our Heritage, Inc. v. Harris*, 603 F.2d 310, (2d Cir.), cert. denied, 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979). In addition, see *Thompson v. Fugate*, 347 F.Supp. 120, 124 (E.D.Va.1972) (analogizing NHPA case to decisions holding the NEPA applies to unexecuted portions of a plan or project).

**28.** 36 CFR § 800.1.

**29.** 36 CFR § 800.5(e)(1).

**30.** Neither do we find it necessary to distinguish this case on the grounds that it involves construction (not destruction) given that the entire thrust of Vieux Carre's argument is that the park project, without modification, could have a destructive effect on the Vieux Carre National Historic Landmark District. In addition, we believe that characterizing the instant case as involving construction (not destruction) actually makes it less likely to be moot. After all, unlike cases involving the destruction of an historic property, there often are ways to mitigate the negative externalities of things constructed, even after their completion.

■ The Corps also argues that NHPA review cannot be required at this point because the "practical" effect would be to allow Vieux Carre indirectly to make a claim against the non-federal developers. As noted above, however, neither we nor anyone else has any way of knowing at this point whether NHPA review will have *any* effect whatsoever on the non-federal developers. But even if requiring the Corps to comply with NHPA were to have an adverse effect on the park project's non-federal developers, we fail to see why that should require the dismissal of Vieux Carre's otherwise valid suit against the Corps. We are not allowing Vieux Carre to sue the park project's non-federal developers—that issue was decided in *Vieux Carre I*. We recognize that there are situations in which litigants are denied relief because what they seek to do indirectly is something that they cannot do directly.[31] But that is not the case here, for the Corps's alleged refusal to follow its own regulations and to comply with NHPA is the only thing Vieux Carre now seeks to remedy. After all, rare is the litigation that does not at least indirectly affect nonparties. That is unavoidable under our system; it is the stuff of which *amici curiae* are made.

## C. EXISTENCE OF MEANINGFUL RELIEF

The Corps urges this court to affirm the district court's decision finding Vieux Carre's suit moot because substantial completion or completion of the park project means that courts are no longer capable of granting relief. The Corps argues that the relief sought by Vieux Carre is limited to the specific items alleged in its original complaint and request for injunction, such as preventing the demolition of then-existing sheds, buildings, and portions of the wharf apron, and stopping the riverfront project's non-federal developers from proceeding with the project.

■ The Corps's arguments reflect a misunderstanding of both the doctrine of mootness and the nature of Vieux Carre's requested relief. The law is clear that a suit is moot only when it can be shown that a court cannot even "theoretically grant" relief.[32] Mere "[d]ifficulties in formulating a remedy in an otherwise living case do not evidence the absence of a case or controversy."[33] "[T]he question is not whether the precise relief sought at the time an application for injunction was filed is still available. The question is whether there can be *any* effective relief."[34] Therefore, as Vieux Carre has requested a declaration that the Corps must comply with the historic review process, the suit is moot *only* if the Corps presents evidence that compliance with the historic review process—the result that would flow from declaratory judgment in Vieux Carre's favor—could not minimize *any* of the adverse effects on the Vieux Carre National Historic Landmark District resulting from the park project.

At this point, however, assuming that NHPA was in fact triggered by the park project's permit, it is impossible for us to know with any degree of certainty just what the end result of the NHPA process would be. For example, NHPA review could result in a determination by the Advisory Council that at this late date nothing

---

31. See, e.g., *Richmond Power & Light v. Federal Energy Regulatory Com.*, 574 F.2d 610, 620 (D.C.Cir.1978) (holding that because FERC is prohibited from directly ordering involuntary wheeling of electric energy, it is also prohibited from achieving involuntary wheeling by indirection).

32. *Richland Park Homeowners Ass'n v. Pierce*, 671 F.2d 935, 943 (5th Cir.1982).

33. *Ratner v. Sioux Natural Gas Corp.*, 770 F.2d 512, 516 (5th Cir.1985).

34. *Northwest Environmental Defense Center v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir.1988) (emphasis in original), quoting *Garcia v. Lawn*, 805 F.2d 1400, 1403 (9th Cir.1986). Accord *Safe Energy Coalition v. U.S. Nuclear Regulatory Com.*, 866 F.2d 1473, 1476 (D.C.Cir.1989). The Fifth Circuit, in *In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1181 (5th Cir.1986), determined that "[a] case is not moot so long as any claim for relief remains viable, whether that claim was the primary or secondary relief originally sought," citing *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969).

can be done, or should be done, to mitigate the adverse effects of the park project on the historic properties. Or, because, as the Corps points out, the Advisory Council's comments are advisory only and do not bind the Corps to a particular course of action, the Corps might decide not to require mitigation measures even if the Advisory Council should recommend them.[35] It is also possible, however, that the Advisory Council, the Corps, and other interested parties, will be able to implement measures, great or small, in mitigation of some or all adverse effects, if any, wrought by the park. There is, in other words, a broad range of remedies that could conceivably emerge from NHPA review. We find it inappropriate to pre-judge those results as being limited to the extremes of either maintaining the status quo or totally demolishing the park.[36]

 Therefore, a district court should not pre-judge the result of the NHPA process by concluding that no relief is possible. The result of the NHPA process may indeed be that Vieux Carre does not achieve meaningful relief, but it is almost always for the Advisory Council, not the district court, to make this determination. As the First Circuit noted in an analogous NEPA case: "[i]t may prove to be the case that an environmental review of so much of the project as may be subject to feasible alteration will yield few suggestions....

[but this court should] hesitate to pre-judge."[37] Even though, in this NHPA case, Vieux Carre's possible relief may appear to some to be "irrelevant, trivial, or prohibitively expensive," a district court should beware of "shortcutting the process, which has been committed in the first instance to the responsible federal agency."[38]

## D. CAPABLE OF REPETITION YET EVADING REVIEW

Vieux Carre argues alternatively that, even if its suit is otherwise moot, it falls into a long-recognized exception to the mootness doctrine for "issues capable of repetition, yet evading review."[39] Although a case may be technically moot, a federal court may nevertheless retain jurisdiction if a continuing controversy exists or if the challenged problem is likely to recur or is otherwise capable of repetition.[40] The repetition prong of this exception requires that there be some possibility that the challenged conduct will be repeated and affect the plaintiff.[41] The evading review prong of the exception requires that the type of harm be of limited duration so that it is likely to be moot before litigation is completed.[42]

 The district court found, and we agree, that the expectation of future development of the riverfront park on other wharfs along the Mississippi River in the

35. See, e.g., Hough v. Marsh, 557 F.Supp. 74, 87 (D.Mass.1982) (noting that the Advisory Council's regulations impose on the federal agency procedural not substantive obligations).

36. The National Trust for Historic Preservation, acting as amicus curiae in this case, informs us that the Advisory Council itself undertakes a type of mootness analysis under 36 CFR § 800.-6(d) to determine if a project, already commenced, has proceeded too far for its review and comments to be meaningful. We do not have sufficient information about this process, however, to determine if the Advisory Council's foreclosure review is relevant to a district court's analysis of Article III mootness. See National Trust for Historic Preservation v. U.S. Army Corps of Engineers, 552 F.Supp. 784, 789 (S.D.Ohio 1982).

37. Jones v. Lynn, 477 F.2d 885, 891 (1st Cir. 1973). Accord Jones v. District of Columbia

Redevelopment Land Agency, 499 F.2d 502, 513 (D.C.Cir.1974).

38. Id. at 891–92.

39. Southern Pacific Terminal Co. v. Interstate Commerce Com., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

40. Floyd v. Bowen, 833 F.2d 529, 531 n. 2 (5th Cir.1987); Pierce v. Winograd, 757 F.2d 714, 715 (5th Cir.1985).

41. See, e.g., Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1184, 71 L.Ed.2d 353 (1982) (noting that "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party"), citing Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam).

42. Id.

historic district makes the alleged harm to Vieux Carre capable of repetition. As such, Vieux Carre clearly satisfies the first prong of the mootness exception. Unlike the district court, however, we are satisfied that, depending on how the district court decides the remaining legal and factual questions on remand, this type of injury may be inherently capable of evading review. Specifically, we are concerned that such cases may evade review because, under our ruling in *Vieux Carre I*, it is impossible for plaintiffs who challenge agency action in this sort of situation to maintain the status quo by enjoining non-federal developers. If, therefore, after the district court makes the required legal and factual findings, it should still conclude that Vieux Carre's suit is moot, it must consider well whether the injuries alleged by Vieux Carre fit this exception to the mootness doctrine.

### E. DISQUALIFICATION

■■■ Vieux Carre's final argument is that the district court's decision should be set aside because the district judge was required under 28 U.S.C. § 455 to recuse himself from the case. Vieux Carre urges that the district judge had an irreconcilable conflict because of his admitted close personal and political relationship with the mayor of New Orleans, who had a significant political stake in the successful completion of the riverpark project.[43] The standard for judicial disqualification under 28 U.S.C. § 455 is whether a reasonable person, with full knowledge of all the circumstances, would harbor doubts about the judge's impartiality.[44] In this case, we agree with the Corps's contention that because the sole reason expressed in Vieux Carre's motion for disqualification was the temporal proximity of the mayoral election and the mootness hearing, the district court adequately removed any possible harm

from the public's perceived doubts about his impartiality by postponing that hearing until after the election. Neither do we think that there was such a close connection between the district judge and the mayor that recusal was necessary after the election.

### III. CONCLUSION

We recognize that resolution of this case has been for Vieux Carre like trying to push a rope. We are hopeful, therefore, that the third time will enjoy the proverbial charm, for we have no choice but to remand the case once again to the district court for findings of fact and conclusions of law. On remand, the district court must first make the determinations required in *Vieux Carre I*, namely whether the activities and structures that make up the park project are consistent with the § 330.5(a)(3) nationwide permit. The district court must evaluate whether the Corps's interpretation of this nationwide permit, and its determination that the park project is within that regulation, is arbitrary and capricious. If the district court determines that to be the case, the project must be individually permitted. Because, in *Vieux Carre I*, we held that an individual permit triggers NHPA, the project must go through NHPA review, unless on remand the district court becomes aware of circumstances unforeseen in this opinion.

If the district court determines that the Corps was correct in concluding that the activities and structures constituting the park project are within the § 330.5(a)(3) nationwide permit, as properly interpreted, the court then must determine whether the park project is so inconsequential that it does not trigger NHPA.

If the district court concludes that the § 330.5(a)(3) nationwide permit is indeed appropriate, it must determine whether the

---

**43.** In another case, *Mintz v. Barthelemy,* the district judge *sua sponte* recused himself because of his close personal and political relationship with the mayor.

**44.** *Potashnick v. Port City Construction Co.,* 609 F.2d 1101, 1111 (5th Cir.1980). In that case we

stated that "[b]ecause 28 USC § 455(a) focuses on the appearance of impartiality, as opposed to the existence in fact of any bias or prejudice, a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street."

permit was valid, given that the Corps did not follow its own regulations at § 330.-5(b)(9). Similarly, if the district court finds that the activities and structures constituting the park project are so inconsequential that the project does not trigger NHPA, the court must still determine whether the permit is invalid because the Corps failed to comply with its own regulations. Therefore, if the permit is invalid under either analysis, the district court must determine whether the Corps's regulations require the issuance of an individual or regional permit.

If, despite our forgoing analysis of mootness, the district court should determine that Vieux Carre's suit is moot—for example, because the Corps no longer has jurisdiction over the activities and structures constituting the park project—the court must determine nonetheless whether the Corps's acknowledged jurisdiction over the Wharf itself would allow it to order changes in the park project. This is so because we hold that in this case NHPA review is required as long as a federal agency has the ability, under any statute or regulation, to require changes to the federal license authorizing a project. Finally, if the district court should again conclude that Vieux Carre's suit is moot, for whatever reason, the court must determine whether this case nevertheless fits within the "capable of repetition, yet evading review" exception to the mootness doctrine. We specifically instruct the district court to consider whether the case fits this exception because Vieux Carre is unable to maintain the status quo by enjoining the park project's non-federal developers.

Accordingly, for the reasons set forth above, the district court's judgment is REVERSED and the case is REMANDED for proceedings consistent with this decision. We AFFIRM the district court's holding that its postponement of the mootness hearing until after New Orleans's mayoral election eliminated the need, if ever there was any, for recusal under 28 U.S.C. § 455.