NORTH MISSISSIPPI COMMUNICA-
TIONS, INC., and Pamela McPhail Ivy,
Plaintiffs–Appellants,

v.

Douglas W. JONES, Defendant,

Desoto County Board of Supervisor,
Defendant–Appellee.

No. 90–1601.

United States Court of Appeals,
Fifth Circuit.

Jan. 28, 1992.

David J. Cocke, C. William Denton, Borod & Kramer, Memphis, Tenn., for plaintiffs-appellants.

Robert J. Kelly, Ann H. Lamar, Hernando, Miss., for defendant-appellee.

Before BROWN, KING and GARWOOD, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This free-speech case comes before this court for the third time. It all started when the owners of the *North Mississippi Times* brought suit against the DeSoto County Board, alleging that, in violation of the First Amendment, the Board withheld county advertising in retaliation for the *Times'* publication of negative stories about the Board. Because of this court's actions on earlier appeals, the sole issue now before this court is whether the district court properly applied *Mt. Healthy's*[1] burden-shifting analysis to the *Times* § 1983 claim.[2] We conclude that it did not. We reverse in favor of the *Times* and remand for further findings.

Because the long series of events leading up to this dispute have been thoroughly examined in this court's two earlier opinions, we see no need to recite them in detail yet another time.[3] Briefly, the *Times* is a weekly newspaper in DeSoto County, owned by North Mississippi Communications, Inc. The DeSoto County Board was responsible for awarding by bid the county's general legal advertising, which consisted of county board proceedings and legal notices. The advertising had gone largely to the *Times* before 1976. In 1976, both the *Times* and the *Olive Branch Tribune*, another much smaller, weekly county newspaper, bid for the right to publish county advertising. For the first time, the Board required the newspapers to submit their circulation lists for review. Although the *Times* won the bid for publication of the Board proceedings, the Board determined that it would place legal notices in either paper at its discretion.[4]

The district court found that in 1976, the *Times* and *Tribune* received approximately the same number of legal notices. From mid–1977 forward, however, the evidence at trial clearly showed that the Board opted to give almost all its legal notice business to the *Tribune*. In 1977, the *Times* received 41 notices through June 30 and none thereafter; and the *Tribune* received 73 during the first half of 1977 and 113 in the second half. In 1978, the *Times* received only 14 legal notices, while the *Tribune* received 291.

It is undisputed that from 1975 forward, the *Times* published highly critical articles and letters about the Board's questionable activities. The *Times* claimed that the Board withheld county advertising in retaliation for the Board's negative publications in violation of the *Times'* First Amendment rights. Admittedly, the Board's placement of legal notices was discretionary. The *Times*, however, did not assert breach of contract, but instead a § 1983 constitutional violation. Indeed, the district court

---

1. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

2. The *Times* initially alleged violations of sections 1 and 2 of the Sherman Act and state-law tort claims, as well as civil rights claims under 42 U.S.C. § 1983. The district court granted a directed verdict in favor of the Board and dismissed all of the *Times'* claims. In *North Mississippi Communications, Inc. v. Jones*, 792 F.2d 1330 (5th Cir.1986) (*NMCI I*), we affirmed the court's dismissal of the anti-trust claims and remanded for further findings with respect to the Times' § 1983 claim. The district court again found for the Board, and the *Times* appealed. On appeal, we remanded that the court review the *Times'* § 1983 claim in light of *Mt. Healthy*.

3. *See* 792 F.2d 1330 (5th Cir.1986) (*NMCI I*); 874 F.2d 1064 (5th Cir.1989) (*NMCI II*).

4. Unhappy with this result, the *Times* brought a separate suit in April, 1976 in state court to enjoin the Board from publishing any county notices in the *Tribune*, alleging that the *Tribune* was not qualified to publish legal notices because of its small circulation. The *Times'* claim was rejected by the state court and no appeal of this decision was sought.

wholeheartedly agreed with the premise that if the Board withheld legal notice business in retaliation for the *Times'* publication of critical articles, the Board has violated the *Times'* civil rights under the First Amendment.

### Round I: NMCI I

With respect to the *Times'* § 1983 claim, the district court found only that the Board's withholding of county legal advertisements did not threaten to put the *Times* out of business. On appeal, we held that this finding did not dispatch the *Times'* § 1983 claim and remanded this claim to the district court for further findings. Specifically, in *NMCI I,* we directed that the district court determine whether the Board denied some or all of its legal advertising to the *Times* in retaliation for the *Times'* critical news stories and editorials.[5] The court, without a jury, conducted a "second trial"[6] and again found in favor of the Board, concluding that "even though a prima facie case of a constitutional violation was presented in the plaintiff's case in chief, the rebuttal evidence of the Board was just as persuasive that other legitimate reasons existed for favoring the *Tribune* over the *Times."*[7] The court ultimately held: "There is a possibility that the Board wished to retaliate against the *Times* for its editorial positions ... however, the court cannot say that the evidence preponderates toward that finding. The other reasons for favoring the *Tribune* heretofore described appear just as probable."[8]

### If At First You Don't Succeed; Try, Try Again: NMCI II

The *Times* again appealed, claiming that the failure to apply the *Mt. Healthy* burden-shifting analysis to their § 1983 claim

constituted reversible error. Because this claim involved a purely legal question, we justifiably considered it in *NMCI II,* even though the *Times* had raised it for the first time on its second appeal.[9]

*Mt. Healthy* involved the alleged refusal to re-employ a public school teacher because of the teacher's exercise of his free-speech rights. This case gave birth to the two-step burden-shifting rule, which has now become standard fare in discrimination cases. The Supreme Court held that (i) the plaintiff must first show that his constitutionally protected conduct was a substantial or motivating factor in the defendant's decision; and (ii) if the plaintiff carries this burden, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have made the same decision even in the absence of the protected conduct.

We are keenly aware that *Mt. Healthy* has never before been applied to a set of facts involving the denial of public patronage. Nevertheless, this court in *NMCI II* saw no reason why *Mt. Healthy* should not be applied in this context and remanded this case to the district court for the second time for further findings as required by *Mt. Healthy.* We reject the district court's assessment that the application is a strained one. To the contrary, *Mt. Healthy's* rule is broad enough potentially to lend itself to a wide variety of fact patterns.

### NMCI III

Upon remand, the district court, conscientiously, but reluctantly, heeding our mandate to apply the *Mt. Healthy* burden-shifting analysis, again held for the Board, asserting reasons why *Mt. Healthy* could

---

**5.** *NMCI I,* 792 F.2d at 1337.

**6.** Since a directed verdict was awarded to the Board after the presentation of the *Times'* case in the first bench trial, the second trial began with the presentation of the Board's defense. The court heard oral arguments from both sides as well.

**7.** *North Mississippi Communications, Inc. v. DeSoto County,* 681 F.Supp. 1185, 1188 (N.D.Miss. 1988).

**8.** *Id.* at 1189.

**9.** *See Matter of HECI Exploration Co.,* 862 F.2d 513, 518 & n. 7 (5th Cir.1988) and *United States v. D.K.G. Appaloosas, Inc.,* 829 F.2d 532, 537–38 (5th Cir.1987), for the proposition that an issue raised for the first time on appeal will not be considered unless it is a purely legal issue and the refusal to consider it would result in a miscarriage of justice.

not work here.[10] Without hearing any additional evidence, the court first held that the *Times* did not meet its burden under prong one of *Mt. Healthy.* Second, even assuming the *Times* satisfied *Mt. Healthy's* first prong, the court concluded that reasons other than retaliation motivated the Board to switch its advertising from the *Times* to the *Tribune.* We hold that the district court erred on both counts.

### a. Mt. Healthy's First Prong

▮ The district court found that the *Times,* under the first prong of *Mt. Healthy,* failed to show that retaliation was a motivating factor in the Board's denial of county business:

> [T]he placing of patronage business by the Board between two newspapers in the county was possibly a mixed motive act; however, the plaintiff has not proven by credible and probative evidence as it is required to do that the placing of some ads with the *Tribune* was the result of the *Times'* criticisms of the Board.[11]

Because this court in *NMCI II* previously determined that the *Times'* sufficiently proved that retaliation was a motivating factor, the district court's finding clearly disregards our previous mandate and thus violates the law of the case doctrine.

In *NMCI II,* our primary concern was whether the application of the *Mt. Healthy* burden-shifting analysis was appropriate for this case. Although we recognized in *NMCI II* that the district court did not expressly find that the *Times* had proved retaliation was a motivating factor,[12] we also highlighted the fact that the lower court failed to find that retaliation was not a factor in the Board's decision.[13] Despite the absence of this finding by the district court, we nevertheless, in light of the evidence presented on timing, hostility and admissions relating to motivation for the Board's conduct,[14] went on to hold that any other conclusion would be clearly erroneous. We decided that the record evidence established the motivating factor inquiry; without this, there would be no occasion for us to remand in order to consider *Mt. Healthy.*

This court's ultimate *NMCI II* decision to remand to apply *Mt. Healthy* to this case necessarily carried with it the determination that, at the very least, this was a mixed-motives case and that the *Times* had satisfied its burden under prong one of *Mt. Healthy.* In other words, if we had not first found that the *Times* adequately proved that retaliation was a motivating factor, this court would have never instructed the lower court to apply *Mt. Healthy.*

---

**10.** Both the Board and the trial judge exhaust much effort in attempting to persuade us that *Mt. Healthy's* burden-shifting rule simply will not work in this case. Appellee's Brief at 19–20. The district court urges that the rule is unique to cases involving termination of employment or refusal to rehire, arguing that these cases are "a one-time act for purposes of the *Mt. Healthy* analysis," that "the facts in this case involve literally dozens of acts stretching over a four to five year period," and further that "[t]o analyze each of the many decisions made as to which newspaper each ad would be placed in would rival some of the twelve Herculean labors." *North Mississippi,* No. DC81–220–B–O (N.D.Miss. June 25, 1990).

**11.** *Id.* This finding by the district court seems to contradict its earlier conclusion following the second trial. There the district court held that a prima facie case of a constitutional violation was presented in the plaintiff's case in chief. *North Mississippi,* 681 F.Supp. at 1188.

**12.** *NMCI II,* 874 F.2d at 1068.

**13.** *Id.* at n. 1.

**14.** *Id.* at 1068. As to hostility, in *North Mississippi,* 681 F.Supp. at 1188, the trial court found that some of the supervisors felt anger toward the editor of the *Times* for the highly critical stories and editorials published about them. Further, the court stated that "there is a possibility that the Board wished to retaliate against the *Times* for its editorial positions. Such a feeling certainly would not be surprising considering the circumstances,...." *Id.* at 1189.

Second, the evidence with respect to timing showed that articles were published about the Board from 1975 forward. In 1976, the *Times* and *Tribune* received an equal share of the county business. Prior to this time, the *Times* received all of the business. From 1977 forward, the Board allocated approximately 72% of its business to the *Tribune* and only 28% to the *Times.*

■ The law of the case doctrine dictates that a prior decision of this court will be followed without re-examination, both on the remand to the district court and on subsequent appeals to this court,[15] unless (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work manifest injustice.[16] Because of our previous holding in *NMCI II*, the district court's subsequent contrary finding violates the law of the case doctrine. None of the exceptions to the rule afford relief: (i) new or different evidence was not introduced, since the district court did not conduct a third trial; (ii) the Board has not cited, nor are we otherwise aware of, any decisions by other courts rejecting *Mt. Healthy* since our mandate in *NMCI II;* and (iii) the Board has not sufficiently convinced us that our prior decision results in manifest injustice. We therefore hold that the district courts' finding is contrary to our decision and violates the law of the case doctrine.

### b. Second Prong of Mt. Healthy

■ Under our mandate, the burden shifted to the Board to show that it would have withdrawn its legal notice business from the *Times* even in the absence of the *Times'* unconstitutional retaliation. Because of its erroneous interpretation of *NMCI II*, the district court devoted little, if any, attention to the second question of whether the Board would have made the same decision to shift its business to the *Tribune* in the absence of the unconstitutional retaliation. The closest the district court came to finding that the Board met its burden was its following reasoning:

> It is clear that the Board proved in rebuttal that it would have given the *bulk* of its legal ads to the *Tribune* anyway, regardless of the protected conduct of

the *Times*, because of the two broken bid agreements by the *Times* stating that no business from the county would be sought and suggesting the business should go to the *Tribune*. [Emphasis added.][17]

■ We now give this question the close scrutiny it deserves. The district court's assessment that the Board "would have given the *bulk* of its legal ads to the *Tribune* anyway, regardless of the protected conduct of the *Times*" is not sufficient to satisfy *Mt. Healthy*. The district court implicitly determined that the Board need only show that a "bulk" of the legal notices would have been denied to the *Times* notwithstanding its unconstitutional retaliation. We disagree. *Mt. Healthy* instead requires that the Board prove that *none* of the county advertising was withheld from the *Times* in retaliation for its critical publications.

The Board complains that it can not possibly "prove by a preponderance of the evidence that *each* of the 252 advertisements would have been awarded to the *Tribune* even in the absence of the criticisms of the *Times*," adopting the district court's view that "[s]uch a Herculean task would be an impossible burden to meet and be manifestly unjust."[18] Despite the potential difficulty of determining whether any of the 252 advertisements were denied to the *Times* on the basis of retaliation, we cannot escape the conclusion that the trial court's finding rests upon an erroneous view of *Mt. Healthy*. The Board's denial of publication of just one county legal notice based upon the *Times'* unconstitutional retaliation constitutes a violation of the First Amendment.

We reiterate the United States Supreme Court's mandate that in a mixed-motives case, the defendant may not prevail "by offering a legitimate and sufficient reason

**15.** *Dickinson v. Auto Ctr. Mfr. Co.,* 733 F.2d 1092, 1096 (5th Cir.1983).

**16.** *Schexnider v. McDermott Int'l, Inc.,* 868 F.2d 717, 718–19 (5th Cir.1989); *Dickinson,* at 1096 n. 3. (quoting *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967)).

**17.** *North Mississippi,* No. DC81–220–B–O (N.D.Miss. June 25, 1990).

**18.** Appellee's Brief at 19–20.

for its decision if that reason did not motivate it at the time of the decision;" nor may it prevail "by merely showing that at the time of the decision it was motivated only in part by a legitimate reason."[19] The defendant is required to make this showing by a preponderance of the evidence.[20] The district court failed to apply this test to the award of each and every advertisement.

■ When a trial court has made a fact finding upon an erroneous view of the law, the factual determination loses all vitality, requiring a remand.[21] Because the *Times* is entitled to a determination of how many ads it lost due to the Board's unconstitutional retaliation (and the *Mount Healthy* burden is on the Board), we regretfully remand this case for the fourth time in order that the trial court find exactly which advertisements, if any, were the subject of the Board's retaliation.

Accordingly, we reverse and remand this case to the district court for the following limited purposes: 1) to find whether the Board established by a preponderance of the evidence that each and every ad would have been awarded to the *Tribune* regardless of the *Times'* protected conduct; if not, then to further find 2) the specific ads withheld as a result of the protected conduct; 3) damages with respect to the withheld advertising; and 4) reasonable attorneys' fees for the *Times*.

REVERSED and REMANDED.

---

**19.** *Price Waterhouse v. Hopkins,* 490 U.S. 228, 248, 109 S.Ct. 1775, 1789, 104 L.Ed.2d 268, 289 (1989).

**20.** *Id.*

**21.** *See Pullman–Standard v. Swint,* 456 U.S. 273, 291, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66, 81 (1982).