**FIRST NATIONAL BANK
OF LOUISVILLE**

v.

**Loretta LUSTIG, et al.**

**Civ. A. Nos. 87–5488, 88–1682.**

United States District Court,
E.D. Louisiana.

July 30, 1993.

Order and Reasons on Reconsideration
Sept. 20, 1993.

Patrick M. Ardis, Elizabeth A. McNeill, Wolff Ardis, Memphis, TN, William E. Brown, Barry W. Ashe, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, LA, for plaintiffs.

Larry L. Simms, Gibson, Dunn & Crutcher, Washington, DC, John J. Swenson, Michael P. McNamara, Mary Lee Wegner, Gibson, Dunn & Crutcher, Los Angeles, CA,

Frederick F. Bott, Matt J. Farley, Allen F. Campbell, Ellis B. Murov, Duris L. Holmes, Deutsch, Kerrigan & Stiles, New Orleans, LA, for defendants, The Aetna Cas. and Surety Co. and Federal Ins. Co.

MENTZ, Senior District Judge.

Before the Court are several pre-trial motions which do not require oral argument.

Accordingly,

IT IS ORDERED that:

1) *Plaintiff's [FNBL's] Motion in Limine to Preclude Aetna/Federal from Asserting that the "Blown Take-outs" Show FNBL's Failure to Mitigate or that FNBL's Negligence Caused the Loss*

**DENIED.** The jury's verdict in the first trial has no bearing on the issues to be tried in the upcoming trial because the Fifth Circuit vacated the judgment on that verdict. Causation and mitigation remain viable issues on which the "blown take-outs" are relevant. The "blown take-outs" are not admissible on a contributory negligence defense. *See* Order and Reasons entered June 20, 1990 ("[a] bank's mismanagement or negligence is not a defense to a fidelity bond claim"). The fact that the blown take-outs could demonstrate negligence on the part of FNBL (were negligence a proper issue) does not preclude use of the "blown take-outs" to show lack of causation and failure to mitigate.

2) *FNBL's Motion to Preclude Any Reference at Trial to Section 4 of the Bond, Because It Has Now Become Irrelevant*

**GRANTED IN PART**—The Sureties are precluded from referring at trial to Section 4's definition of "discovery" with respect to a timely notice defense based on Section 5 or an automatic termination defense based on Section 12.

Section 4, which defines when "discovery" of a loss occurs, is no longer relevant for determining the time period within which the insured must provide notice of the loss to the insurer under section 5 because the Sureties have voluntarily waived their timely notice defense. Section 4's definition of "discovery" is also not relevant to the jury's determination of whether coverage automatically terminated under section 12 as a result of the insured having "learned" of an employee's dishonest or fraudulent act. Section 12 does not define "learn," but it is for the Court to decide the legal definition and to instruct the jury in that regard. It will be the jury's duty to apply the Court's instruction on the legal definition of "learn" in deciding whether the evidence is sufficient to trigger section 12's termination clause; section 4 is not relevant to their decision.

**DENIED IN PART**—The Court rejects FNBL's position that the standard under section 12 for when an insured learns of an employee's dishonest or fraudulent act is a purely subjective actual knowledge standard. The Court also rejects any suggestion by the Sureties that it is a purely objective "should have known" standard.

The definition of "discover" under section 4 is not determinative of the definition of "learn" under section 12, but is helpful in interpreting section 12's termination provisions. *See City State Bank in Wellington v. U.S.F. & G.*, 778 F.2d 1103, 1107 n. 4 (5th Cir.1985).

After having reviewed the legal authorities, this Court discerns no appreciable difference in the legal definition of "discover" and "learn." Case law on this subject frequently interchanges or confuses terms like "actual discovery", "actual knowledge", "know", "aware", "learn" and "discover", but regardless of the terminology used, the majority of courts actually apply a "reason to know" standard to section 12's termination clause, which is the same standard described in section 4. The "reason to know" standard lies between the purely objective standard of "should have known" and the purely subjective standard of "actual knowledge"; it combines both subjective and objective elements—awareness of underlying facts from which the insured as a reasonable person should make certain inferences about the fact in question.

Section 12's termination clause applies when the insured has actual knowledge of facts which would cause a reasonable person in the insured's position to infer that an employee has committed dishonest or fraudu-

lent acts. Mere suspicion of dishonesty without factual support from which a reasonable person would assume the existence of such dishonest or fraudulent acts is insufficient to activate the termination clause. Nor is there a duty to investigate a suspicion in order to develop the facts on which an assumption could reasonably be predicated. *See City Bank In Wellington,* 778 F.2d at 1107–1108 (adopting case law defining "discovery," the court held that "learn" requires subjective knowledge of facts from which the insured could have reasonably inferred wrongdoing); *Central Progressive Bank v. Fireman's Fund Ins. Co.,* 658 F.2d 377, 380 (5th Cir. 1981) (the termination provision applies where the insured has knowledge or information from which knowledge of dishonesty can be inferred); *FDIC v. St. Paul Fire and Marine Ins. Co.,* 738 F.Supp. 1146, 1161–62 (M.D.Tenn.1990) (citing cases defining "discovery" the Court held that an insured "learns" of employee dishonesty when it has "knowledge which would justify a careful and prudent man in charging another with fraud or dishonesty"), *rev'd on other grounds,* 942 F.2d 1032 (6th Cir.1991).

3) *[Plaintiff,] FNBL's Motion in Limine to Preclude Aetna/Federal's Contradictory Positions under Section 4 and Insuring Agreement A*

**MOOT**—This motion does not present an actionable controversy because the Sureties are not asserting any position or claim that is dependent upon Section 4's definition of when discovery of a loss occurs—the Sureties voluntarily waived their timely notice defense, and they have asserted no claim that FNBL discovered the loss outside the bond period.

4) *[Plaintiff,] FNBL's Motion to Reconsider the Court's Ruling That Knowledge of Outside Counsel is Knowledge of the "Insured" for Purposes of Automatic Termination Under Section 12 of the Bond*

■ **DENIED.** Section 12's automatic termination clause is triggered by "learning" of an employee's dishonesty. Those whose learning triggers the clause are the "insured, or any director or officer." The inclusion of the words "or any director or officer" does not restrict the "insured" to directors and officers. Because an insured entity like FNBL can act only through its agents, an agent of the insured may learn of dishonest or fraudulent acts within the scope of his authority on behalf of the insured in order to trigger section 12's termination clause. *See Mercedes–Benz of North America, Inc. v. Hartford Accident & Indemnity Co.,* 974 F.2d 1342 (9th Cir.1992); *Ritchie Grocer Co. v. Aetna Cas. & Sur. Co.,* 426 F.2d 499 (8th Cir.1970); *Orgeron v. Mine Safety Appliances Co.,* 603 F.Supp. 364 (E.D.La.1985); *Lafayette Bank & Trust Co. v. Aetna Cas. and Sur. Co.,* 177 Conn. 137, 411 A.2d 937 (1979). *Fidelity & Dep. Co. v. Courtney,* 186 U.S. 342, 22 S.Ct. 833, 46 L.Ed. 1193 (1902), cited by FNBL, is distinguishable in that it did not involve a termination clause triggered by the insured's "learning," but instead concerned a termination clause triggered by the employer's "condoning" acts of default by the bonded employee. The Court's holding that the bank cannot be charged with condoning default based on another employee's uncommunicated knowledge of the bonded employee's default is not applicable to the case at bar. *See* Schoonover, *Discovery, Notice, and Automatic Cancellation under Revised Form 24,* 16 The Forum 962, 975–78 (1981).

5) *FNBL's Motion to Review Magistrate's January 4, 1993, Minute Entry Denying FNBL's Motion to Compel Supplementation of Discovery*

**DENIED.** There is no continuing duty to supplement discovery responses except as specifically enumerated by Rule 26(e). The record before the Court contains no evidence or reason to believe that the Sureties have failed to comply with their legal duty under Rule 26(e), or that any of Rule 26(e)'s exceptions apply to the Sureties' original discovery responses. Rule 26(e) imposes no duty to supplement with a representation that the party has no new facts.

6) *Plaintiff, FNBL's, Motion to Rehear and Reverse This Court's Ruling Requiring the Application of Partial Net Recoveries First to Principal Rather than to Earned But Unpaid Interest*

**DENIED** as premature with the right to reurge in the event that the jury renders a verdict for FNBL on coverage.

**7)** *[Plaintiff], FNBL's Motion in Limine to Admit Into Evidence Statements in the Previous Trial by Frederick R. Bott, the Attorney for Aetna and Federal*

■ **DENIED.** Defense counsel's statement in closing argument to the effect that Kevin DeWitt was dishonest is not admissible as evidence in any subsequent trial. At the time counsel made the statement, Kevin DeWitt's dishonesty for purposes of bond coverage was not in issue, but had been established by way of summary judgment against the defendants. *See* Order and Reasons entered June 15, 1990 and Minute Entry entered June 20, 1990. Any concession of DeWitt's dishonesty during the first trial should not be used against the defendants now that the summary judgment has been vacated by the Fifth Circuit. *See First Nat'l Bank of Louisville v. Lustig,* 961 F.2d 1162 (5th Cir. 1992). In addition, the alleged inconsistency between counsel's position at the first trial and at present is not clear because the "dishonesty" necessary to trigger the automatic termination clause, which was in issue during the first trial, is *any* dishonesty, rather than the more restrictive definition of "dishonesty" for purposes of coverage. *See First Nat'l Bank of Louisville,* 961 F.2d at 1168.

**8)** *[Plaintiff], FNBL's, Motion in Limine to Exclude Kevin DeWitt's Handwritten Statement Dated March 28, 1986, and Steven C. Martin's Memorandum to File Dated March 8, 1988*

■ **GRANTED** with respect to the coverage trial—DeWitt's statement is not admissible under Fed.R.Evid. 803(2) (excited utterance exception) because the circumstances at the time he made the statement indicate that he had the opportunity and capacity for conscious reflection. DeWitt wrote the statement after a two-hour conference during which he responded rationally to questions. Before writing the statement DeWitt telephoned Loretta Lustig, which gave him fur-

ther opportunity for reflection and fabrication.

■ DeWitt's statement is not admissible under Fed.R.Evid. 803(24) (catch-all exception) because the statement lacks circumstantial guarantees of trustworthiness. The unsworn statement was written at the request of his former employer who was threatening criminal prosecution, thus providing DeWitt motive to lie. During the course of the two-hour meeting with FNBL and when he left the meeting to telephone Loretta Lustig, he had opportunity to plot his position. In addition, DeWitt's character for truthfulness and honesty is seriously undermined by his guilty plea to bank fraud. *See Rock v. Huffco Gas & Oil Co., Inc.,* 922 F.2d 272 (5th Cir.1991).

■ Even if DeWitt is not available to testify at trial, his complete statement is not admissible under 804(b)(3) (statement against interest). In the three-page statement, there are four sentences that may be considered, at least in part, against DeWitt's penal interest. In these sentences he admitted to falsifying credit references and taking money from Lustig.[1] Although the statements against DeWitt's interest were not conclusive of his criminal liability, a reasonable man in DeWitt's position would not admit to falsifying credit references and accepting money unless he believed it to be true. In the majority of the statement, DeWitt attempted to defend his conduct with the explanation that he falsified credit references only to get the loan approved because he believed the loans were good and that the projects would be successfully completed. He also emphasized that he did not take any money in connection with making these loans. These exculpatory statements do not indicate a high degree of trustworthiness. "A patchwork of admissions, ... cannot provide the circumstantial guarantees of trustworthiness necessary to admit the *complete* statement." *Rock,* 922 F.2d at 282 (emphasis added). Those few portions of DeWitt's statement which are

---

1. The statements against interest found in DeWitt's March 28, 1986 handwritten statement are: (a) "I falsified credit information about the contractor and the borrower;" (b) "I falsified the credit information on the guarantors in order to have the loan approved;" (c) "I falsified credit information about the Double Development loans in order to have the loan approved;" and (d) "As far as accepting money from Ms. Lustig, I accepted money on April 13, 1986, the day before I left the bank."

against his interest may be severed from the remainder of the statement and introduced into evidence, if DeWitt is not available as a witness. Accordingly, the self-serving portions of DeWitt's statement are not admissible under Fed.R.Evid. 804(b)(3).

The motion is MOOT with respect to the Martin memorandum, because the Sureties concede in their opposition memorandum that they do not intend to introduce Martin's memorandum at the coverage trial.

9) *[Plaintiff, FNBL's], Motion to Allow FNBL to Use "INVZN" at Trial*

GRANTED—unopposed. FNBL may use INVZN's interactive presentation system to display documentary evidence, video depositions, and graphics, during the course of trial, reserving the right to the Sureties to object to the admissibility or use of any individual document, video deposition, or graphic according to the Federal Rules of Evidence. An INVZN technician may inspect the courtroom on Wednesday, September 1, 1993 at 10:00 a.m. FNBL shall give the Sureties reasonable opportunity to observe FNBL's INVZN system in use before trial.

10) *[Plaintiff, FNBL's,] Motion in Limine to Prohibit Aetna/Federal from Raising Defense of Reliance on Advice of Counsel*

MOOT—This motion does not present an actionable controversy because the Sureties represent, consistent with their previous statements, that they will not assert or pursue a defense based on advice of counsel after FNBL brought suit against them on July 18, 1988.

11) *[Plaintiff, FNBL's,] Motion in Limine to Allow Testimony on Reserve Information*

■ DENIED. Evidence of the Sureties' policies and procedures for setting reserves is not relevant to the issue of the Sureties' contractual liability. Even assuming the Sureties set their reserves based on a factual

and legal evaluation of their contractual liability, such an assessment would be probative only of the Sureties' opinion, which has no bearing on whether the facts surrounding DeWitt's dishonesty satisfy the contractual elements necessary for coverage.

12) *Motion in Limine of Defendants the Aetna Casualty and Surety Company and Federal Insurance Company to Prohibit Any Reference at Trial to Materials that Defendants Properly Withheld from Discovery on Grounds of Attorney–Client or Work Product Privilege*

GRANTED. The parties are prohibited from making any reference at trial to materials that were judicially determined to be protected from discovery by the attorney-client or work product privilege, or to the fact of such proper assertions.

## ORDER AND REASONS ON RECONSIDERATION

Defendants Aetna Casualty and Surety Company and Federal Insurance Company (collectively referred to as the "Sureties") ask the court to reconsider and modify its ruling that excluded from trial portions of defendant Kevin Dewitt's handwritten statement dated March 28, 1986. For the reasons that follow, the court reconsiders its decision and declines to modify its ruling.

## BACKGROUND

The court previously held that Dewitt's handwritten statement dated March 28, 1993, would be excluded at trial with the exception of four sentences [1] that may be admitted if he were unavailable.[2] The court found, first, that the statement was inadmissible as an excited utterance exception [3] to the hearsay rule; second, that it was inadmissible under the catch-all exception [4] to the hearsay rule;

---

1. Those four sentences are: (1) "I falsified credit information about the contractor and the borrower;" (2) "I falsified the credit information on the guarantors in order to have the loan approved;" (3) "I falsified credit information about the Double Development loans in order to have the loan approved;" and (4) "As far as accepting money from Ms. Lustig, I accepted money on

April 13, 1986, the day before I left the bank." Doc. 2099 n. 1

2. Doc. 2099.

3. Fed.R.Evid. 803(2).

4. Fed.R.Evid. 803(24).

and third, that the complete document was inadmissible as a statement against interest.[5] The court held that those few portions of Dewitt's statement that are against his interest[6] may be severed from the remainder of the document and introduced into evidence if he is not available as a witness. The Sureties ask the court to modify its ruling to allow the admission of additional explanatory statements.

## LAW AND DECISION

### A. Rule of Completeness

The Sureties argue that the Rule of Completeness as incorporated in Fed.R.Evid. 106[7] prohibits severance of Dewitt's inculpatory statements from his exculpatory qualifications of those statements. Excluding what the Sureties term the "exculpatory language" would be both unfair and misleading, they argue, because the excluded language exonerates Dewitt according to the standard stated in the decision of the United States Court of Appeals for the Fifth Circuit that remanded this matter for trial.[8]

Plaintiff First National Bank of Louisville ("FNBL") responds that neither Rule 106 nor the rule of completeness permits the use of statements that are otherwise inadmissible, such as these.

The rule of completeness, which underlies Fed.R. of Evid. 106, provides: The opponent, against whom part of a statement has been admitted, should have the right to put in the remainder of the evidence to secure a complete understanding of the total tenor and effect of the statement. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168, 109 S.Ct. 439, 449, 102 L.Ed.2d 445 (1988) (citing 7 J.

Wigmore, *Evidence in Trials at Common Law* § 2113).

The United States Supreme Court has held that the court should allow presentation of additional information when it will counteract a prejudicial impression created by incomplete information. *Beech Aircraft*, 488 U.S. at 171, 109 S.Ct. at 451. Such admissions are allowed to avoid misleading the court when portions of an admitted statement are taken out of context. *Id.* at 171 n. 14, 109 S.Ct. at 451 n. 14.[9] However, Rule 106 merely addresses the order of proof and does not make admissible evidence that should otherwise be excluded. 1 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 106[01] (1986). Application of Rule 106 is within the trial judge's discretion. He must weigh the adequacy of the additional evidence that will be used to rectify the misleading impression against the waste of time and attention and unfairness created by dulling the proponent's case. *See generally* 1 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 106[01], [02] (1986).

The court finds, first, that the additional information the Sureties seek to introduce is otherwise inadmissible for the reasons stated in the court's minute entry of July 29, 1993.[10] Second, even if the additional information were otherwise admissible, such information is unnecessary under Fed.R.Evid. 106 and the rule of completeness. Dewitt's so-called exculpatory statements are not needed to counteract any "prejudicial impression" as the concept was contemplated in *Beech Aircraft* because his four statements against interest are not incomplete or misleading and

---

5. Fed.R.Evid. 804(b)(3).

6. Pursuant to Fed.R.Evid. 804(b)(3).

7. The rule provides: When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it. Fed.R.Evid. 106.

8. *First National Bank of Louisville v. Lustig*, 961 F.2d 1162, 1165 (5th Cir.1992).

9. In *Beech Aircraft*, plaintiff John C. Rainey testified as an adverse witness in defendant's case about a letter he wrote that explained his theory of the case. Defendant used only part of the letter at trial, and the court refused to allow plaintiff's counsel to cross-examine him in an attempt to counteract the distorted and prejudicial impression that his testimony created. The Court relied on the rule of completeness in finding that the trial court erred in not allowing the "completion evidence." *Beech Aircraft*, 488 U.S. at 169–72, 109 S.Ct. at 450–51.

10. Doc. 2099 at 7–9.

do not repudiate or further explain his admissions.

### B. Law of the Case Doctrine

The Sureties argue that the Law of the Case Doctrine requires this court to admit the additional statements because the Fifth Circuit relied on them in its summary judgment ruling. FNBL argues in response that the Fifth Circuit did not rule on the admissibility of this evidence.

The law of the case doctrine dictates that a prior decision of the court will be followed without re-examination on remand and on subsequent appeals with three exceptions.[11] *North Mississippi Communications, Inc. v. Jones*, 951 F.2d 652, 656 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 184, 121 L.Ed.2d 129 (1992).

The Sureties rely on two excerpts from the Fifth Circuit opinion:

"In his original statements to bank officials he asserted that fraudulent acts were for the purpose of getting ahead at the bank." *Lustig*, 961 F.2d at 1166–67.

"In his original statements to bank officials and other evidence, DeWitt indicated that he falsified the loan documents to get ahead at the bank." *Lustig*, 961 F.2d at 1167.

This court's exclusion of portions of the Dewitt statement do not violate the law of the case doctrine because the Fifth Circuit made no evidentiary ruling. Exclusion of the "exculpatory statements" does not preclude admission of the "other evidence" noted in the Fifth Circuit opinion, absent appropriate evidentiary rulings. Accordingly,

**IT IS ORDERED** that the motion for reconsideration is **GRANTED** and the motion to modify the court's order to allow admission of additional statements contained in Kevin Dewitt's March 28, 1986, handwritten statement is **DENIED**.

---

11. The exceptions, which are not applicable here, are: (1) when the evidence on a subsequent trial was substantially different (2) when controlling authority has since made a contrary decision of law applicable to such issues, or (3) when the decision was clearly erroneous and would work manifest injustice. *North Mississippi Communications*, 951 F.2d at 656.