United States Court of Appeals,

Fifth Circuit.

No. 93-3344.

VIEUX CARRE PROPERTY OWNERS RESIDENTS AND ASSOCIATIONS, INC., Plaintiff-Appellant,

v.

Lloyd Kent BROWN, Colonel, Defendant-Appellee.

Dec. 19, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY and JONES, Circuit Judges, and JUSTICE*, District Judge.

EDITH H. JONES, Circuit Judge:

The City of New Orleans' Vieux Carre Commission, the New Orleans City Planning Commission, and the New Orleans City Council all approved the site for a world-class aquarium and riverfront park in 1987. That year a group of landowners in the Vieux Carre National Historic Landmark District—the French Quarter—disgruntled with the "historic impact" of the project, filed suit to arrest its construction. Relying on the Rivers and Harbors Act, 33 U.S.C. § 403, which was designed to protect the navigable waterways of the United States, and the regulations found in 33 C.F.R. §§ 320 through 330, the plaintiffs have managed to survive two prior dismissals of their action by the district court by appeal to this

*District Judge of the Eastern District of Texas, sitting by designation.

1

court.[1]  Despite our reluctance to accept fully the reasoning of the district court, we find no barrier to terminating this litigation since no meaningful relief to the plaintiffs is presently possible.

The park project, properly characterized as "inconsequential," fell within the scope of the Corps' nationwide permit process. Although the Corps' conceded omission of compliance with its internal historical review regulation renders the park's permit technically flawed, neither the regulations nor the RHA authorizes Vieux Carre to remedy that problem.

## I.

The two previous opinions by this court have significantly narrowed the issues.  Ultimately, the Vieux Carre's fate is predetermined by the level of historic review properly imported into the provisions of the Rivers and Harbors Act (RHA).[2]  Although the RHA might appear to constitute an odd vehicle to resolve a dispute over historic impact, the provisions of the Act are triggered because *some* structures involved in the project were built on the Bienville Street Wharf.  The RHA prohibits all activities affecting the course, condition, location, or capacity of any navigable water unless authorized by a permit issued by the Army Corps of Engineers.  *Vieux Carre II,* 948 F.2d at 1439 n. 2.

---

[1]*See Vieux Carre Property Owners v. Brown,* 948 F.2d 1436 (5th Cir.1991) (*Vieux Carre II* );  *Vieux Carre Property Owners, Residents & Associates, Inc. v. Brown,* 875 F.2d 453 (5th Cir.1989), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 720, 107 L.Ed.2d 739 (1990) (*Vieux Carre I* ).

[2]33 U.S.C. § 403 *et seq.*

*Vieux Carre I* determined that only the park (in contrast to the aquarium) segment of the project could *obstruct navigable capacity in waters of the* United States so that it alone required a permit from the Corps. *Vieux Carre I,* 875 F.2d at 462.[3]

That conclusion the Corps no longer contests. Not all permits are created equal, however; the burden on the Corps of assessing historical impact may vary considerably as a repercussion of the precise type of permit required. Specifically, the Corps is authorized to issue two types of permits, individual and general. *Vieux Carre II,* 948 F.2d 1436 n. 3; 33 CFR § 325.5(a). If an individual permit is necessary, the formal historic review consultation procedures mandated by Congress in Section 106 of the National Historic Preservation Act (NHPA) are triggered. *Vieux Carre I,* 875 F.2d at 464. The Corps concedes that this type of historic impact analysis was never undertaken. Nevertheless, a form of general permit that authorizes specific types of activities without prior particularized approval of the Corps—the nationwide permit—was designed to expedite endeavors with inconsequential effects on the RHA concerns. See 33 C.F.R. § 330.1 (stating that nationwide permits "are designed to allow certain activities to occur with little, if any, delay or paperwork"). Projects exempted from the individual permit requirement by virtue of the nationwide permit merely demand minimal, informal consideration of historical impact. *Vieux Carre I,* 875 F.2d at 465 ("nationwide permits

---

[3]More precisely, this court held that the Corps' conclusion that the aquarium project would not affect navigation was not arbitrary and capricious. *Id.*

3

authorizing truly inconsequential activities are not trigger[s]" of the NHPA).

In the Corps' judgment the construction of the park satisfied the criteria for sanction under the nationwide permit. The district court held on remand that this conclusion was not arbitrary or capricious, and in accord with this court's directive the district court further inquired whether the park project was "so inconsequential that it does not trigger NHPA." *Vieux Carre II,* 948 F.2d at 1448. Inferring that the proper measure of whether an activity is consequential is its impact on navigation, the court held that since the park spawned no effect on navigation the Corps need not activate the procedures demanded by the NHPA.

Although Vieux Carre challenges these conclusions in this appeal, its more cogent assaults address the district court's deductions from these premises. Indeed, the crux of this protracted litigation assumes that the district court correctly resolved the NHPA question. Instead, the enigmatic question persists as to whether the § 330.5(a)(3) nationwide permit is—or ever was—valid "given that the Corps did not follow its own regulations at § 330.5(b)(9)."[4] *Vieux Carre II,* 948 F.2d at 1449.

---

[4] 33 C.F.R. § 330.5(b)(9) (1986) provides in relevant part:
That, if the activity may adversely affect historic properties which the National Park Service has listed on, or determined eligible for listing on, the National Register of Historic Places, the permittee will notify the district engineer. If the district engineer determines that such historic properties may be adversely affected, he will provide the Advisory Council on Historic Preservation an opportunity to comment on the effects on such historic properties or he will consider modification, suspension, or

Simply, the Corps' "conce[ssion] that it did not evaluate the historic impact of either phrase of the project"[5] violates even an interpretation of section 330.5(b)(9) demanding solely pro forma consideration.[6]

The district court held for the second time that the completion of the project rendered this difficulty moot. Once again, this decision did not technically comply with our instructions on remand. Nevertheless, the interpretation we ascribe to the Rivers and Harbors Act is of little more avail to the plaintiffs.

II.

We proceed in this trilogy by first affirming the district court's careful treatment of the "appropriateness" of a nationwide

revocation in accordance with 33 C.F.R. § 325.7.

[5]*Vieux Carre I,* 875 F.2d at 465.

[6]The district court ventured to finesse this complication by reexamination of the issue. Applying an exception to the "law of the case" doctrine, the court concluded that the Fifth Circuit's determination "that the Corps concedes that it did not evaluate the historic impact of either phase if the project", *see Vieux Carre I,* 875 F.2d at 465, has no support in the record, thereby rendering it clearly erroneous. Upon reexamination, the district court held that the Corps had complied with the regulation. In particular, the court relied upon Colonel Brown, district engineer for the Corps, who testified that he and his staff has discussed the impact of the park project on the French Quarter and judged that no adverse impact would result. Although a review of the record in *Vieux Carre I* does leave the appropriate interpretation of the "concession" open to debate, the Corps had several procedures at its disposal five years ago to bring this misunderstanding to the attention of the original panel of this court. Without an unequivocal departure from the record, revision at this late date of settled issues is imprudent in light of the superior knowledge of the original panel of the context of the "concession," and the risk of undermining the litigation decisions the parties adopted in reliance upon it.

permit and its assessment of the activities as "inconsequential."

The Corps determined that the riverfront park project fell within § 330.5(a)(3) of its nationwide permit program.[7] The court found that there was no construction beneath the wharf, and the dimensions of the wharf did not change. Critically, its maritime purpose as a general cargo wharf was preserved. Since an agency is afforded "substantial deference" when it interprets its own regulations, *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986), our inquiry is confined to whether this judgment was arbitrary or capricious. Considering that the Corps' jurisdiction emanates from effects on navigable water, evaluating whether the park resulted in a deviation in the original plan or a different use for the wharf from the perspective of the wharf's maritime function is perfectly reasonable. Hence the changes affecting landward surface are not ineligible for authorization by means of a nationwide permit.

Similarly, the district court properly gauged "inconsequentiality" by reference to the project's impact "on the

---

[7] The § 330.5(a)(3) nationwide permit provides in relevant part: The repair, rehabilitation, or replacement of any previously authorized, currently serviceable, structure or fill, or of any currently serviceable structure or fill constructed prior to the requirement for authorization, *provided* such repair, rehabilitation, or replacement does not result in a deviation from the plans of the original structure or fill, and *further provided* that the structure or fill has not been put to uses differing from uses specified for it in any permit authorizing its original construction.

33 C.F.R. § 330.5(a)(3) (1986) (emphasis added).

6

RHA concerns," *i.e.,* the obstruction of navigable waters. *See Vieux Carre I,* 875 F.2d at 465. In this respect, the fact that the project had no effect on the ability of the wharf to function in its "navigational" capacity proves crucial. Finally, even if the decision on consequentiality should have considered the park's historic impact separately from its impact on navigable waters, appellants have not carried their burden of demonstrating that the Corps' decision was arbitrary and capricious. With the exception of an occasional reference to the increased traffic and congestion attributable to the development of the *aquarium* and park project, appellants failed to identify any specific relationship between the park's development and historic preservation consequences for the French Quarter.[8] Consequently, no justification is apparent for disturbing the district court's conclusion that the Corps properly denominated the park project under its nationwide permit system.

III.

Because of the vitality of the Corps' concession that it did not follow its own historical impact regulation, § 330.5(b)(9), the permit authorizing the park project, albeit appropriate, is defective. Compliance with section 330.5(b)(9), requiring the consideration of adverse historical impact by the district engineer, is a "condition" of activity licensed via the nationwide permit scheme. See 33 C.F.R. § 330.5(b) ("Conditions"). Since no

---

[8]Recall that any increased traffic and congestion would be relevant only to the extent it could be tied to the development of the park as the aquarium is beyond the jurisdiction of the Corps. *See Vieux Carre I,* 875 F.2d at 463.

individualized permit was ever sought for the park project, no valid authorization exists. 33 C.F.R. § 330.1 ("Failure to comply with a condition does not necessarily mean the activity cannot be authorized but rather that the activity can only be authorized by an individual or regional permit.") "Without a valid and appropriate permit, the park project is unlawful under RHA § 10." *Vieux Carre II,* 948 F.2d at 1443 n. 22.

Although this corollary manifests a ring of importance, the "unlawful" shibboleth does not advance the cause of the Vieux Carre. Indeed, the fact that the park is illegal may expose others to draconian consequences,[9] but the RHA statutory scheme does not assign enforcement prerogatives to these plaintiffs.

The Vieux Carre cannot pursue an injunction to ameliorate the violation of RHA § 10. *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779-80, 68 L.Ed.2d 101 (1981) (RHA does not provide private right of action). Moreover, this court has already rejected the suggestion that the Corps could be compelled to enforce the statute. *Vieux Carre I,* 875 F.2d at 457 ("[N]o statute requires the Corps to enforce the RHA provision that Vieux Carre claims was violated here. In fact, 33 U.S.C. § 406 [10] explicitly

---

[9]These are criminal statutes. *See* 33 U.S.C. § 406 (persons violating this title are guilty of a misdemeanor punishable by a term of imprisonment not exceeding one year and a fine of $500-2,500).

[10]"[T]he removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States." 33

vests that authority in the Attorney General.")[11]  And patently the Attorney General may not be obliged to prosecute any offenders. *Diamond v. Charles,* 476 U.S. 54, 64-65, 106 S.Ct. 1697, 1704, 90 L.Ed.2d 48 (1986) (in American jurisprudence a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another).

The Army Corps of Engineers is not, however, left unbridled. Other parties, concerned with exposure to criminal liability, must be motivated in the future to seek an after-the-fact permit.  For example, a need or desire for new construction or a modification of the park project may arise.  As section 401 makes it unlawful "to *construct* or *commence* the *construction*" of a structure without the designated approval, only the foolhardy would proceed in such a new venture in disregard of the statutory penalty.  To issue such a "valid" permit, the Corps could not circumvent the historical review process.  If the contemplated activity warranted the simplified approach of the nationwide permit only brief consultation would be implicated;  otherwise, complete NHPA treatment would be necessary.[12]

IV.

---

U.S.C. § 406.

[11]Interestingly, it is the Department of Justice that has been defending the position of the Army Corps against the Vieux Carre.

[12]Since the Corps cannot modify, suspend, or revoke a permit that does not exist, § 325.6(a) has no application.  No need arises, therefore, to answer the difficult question whether or not permits "expire."  *See Vieux Carre II,* 948 F.2d at 1444.

For these reasons, we *AFFIRM* the judgment of the district court.

JUSTICE, District Judge, dissenting:

I wholly agree with the majority opinion, save for its ultimate conclusion that no meaningful relief is now available to plaintiff-appellant Vieux Carre. *Vieux Carre I* plainly hold that Vieux Carre "has standing to assert its claim for a declaratory judgment against the Corps." *Vieux Carre Property Owners v. Brown,* 875 F.2d 453, 459 (5th Cir.1989). The majority opinion is clearly contrary to *Vieux Carre I* in this respect, and apparently fails to give recognition to the law of the case doctrine. *North Miss. Communications v. Jones,* 951 F.2d 652, 656 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 184, 121 L.Ed.2d 129 (1992).

I would reverse and remand this case, in order that Vieux Carre may pursue the remedy made available to it under *Vieux Carre I.*